Argued and submitted December 19, 2013, reversed and remanded
December 31, 2014

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DAMASCUS LORD SEYMOR MENEFEE,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0900563; A142997

341 P3d 229

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. With her on the opening and reply briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services. Damascus Lord Seymor Menefee filed the supplemental brief *pro se.*

Timothy A. Sylwester, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Defendant appeals a judgment convicting him of first-degree robbery, ORS 164.415; second-degree robbery, ORS 164.405; first-degree theft, ORS 164.055; felon in possession of a firearm, ORS 166.270; and unlawful use of a weapon, ORS 166.220, raising eight assignments of error. We write only to address defendant's first through third assignments of error, in which he argues that the trial court erred when it (1) concluded that he had waived his right to counsel; (2) excluded defendant from the courtroom for the majority of the trial; and (3) conducted the majority of the trial without the presence of defendant or defense counsel. For the reasons below, we reverse and remand.[1]

## I. FACTS AND PROCEDURAL HISTORY

The facts of this case are procedural and not in dispute. The key events occurred on the day before and the first day of trial and led to defendant's self-representation and later removal from the courtroom.

To provide some context for the facts of this case, we note that defendant employed what is known colloquially as the "flesh and blood" defense, which is "the embodiment * * * of a movement sometimes referred to as the 'sovereign citizen' or 'anti-government' movement." *See* James Erickson Evans, Comment, *The "Flesh and Blood" Defense*, 53 Wm & Mary L Rev 1361, 1363 (2012). A common feature of that defense is the defendant's claim that he or she is a "flesh and blood" person, who is distinct from the person named in the indictment and that, accordingly, the trial court lacks jurisdiction over the defendant. *Id.* at 1372. That was defendant's argument in this case.

The state charged defendant with first-degree robbery, second-degree robbery, first-degree theft, felon in

---

[1] In a *pro se* supplemental brief, defendant raises three additional assignments of error. He argues that the trial court erred in (1) conducting the trial without entry of a plea; (2) not providing defendant with an opportunity to return to the courtroom and finding that he had waived his right to be present for the remainder of the trial; and (3) abandoning the information, not arraigning defendant on the indictment, and proceeding without jurisdiction. Because we resolve defendant's appeal on a different issue, we do not reach his *pro se* assignments. We also do not reach defendant's other five assignments of error, none of which would entitle defendant to any greater relief.

possession of a firearm, and unlawful use of a weapon in connection with an armed robbery. In the pretrial proceedings, defendant asserted that he was not the "debtor juristic person Damascus Lord Seymor Menefee," listed in the charging instrument, but rather that he was the "secured party creditor" over that "corporate entity."[2] Accordingly, defendant contended that the court had to prove that it had "subject matter jurisdiction" over him, the "flesh and blood, sentient man."

Defendant's trial was scheduled to begin on July 6. On that date, defendant was in custody and appeared without counsel. The trial court warned defendant about the risks of proceeding *pro se* and asked him repeatedly if he wanted to postpone trial and have a lawyer appointed to represent him. However, each time the court asked defendant about counsel, defendant refused to give a direct answer and continued to assert that he was not waiving any of his rights and that the court had failed to establish that it had jurisdiction over him. Ultimately, the trial court ruled that defendant's responses reflected a decision on his part to waive his right to counsel and to proceed *pro se*. In response to that ruling, defendant stated, "I object to that completely, wholeheartedly, with every right that I reserve as a human being[.]"[3] Defendant, however, did not state

---

[2] It is typical for defendants using the "flesh and blood" defense to "refuse to acknowledge that they are the person named in the indictment, often because the indictment names the defendant in all capital letters, and flesh and blood theory instructs that the all-capital name represents the 'corporate citizen' named on one's Social Security card." Evans, 53 Wm & Mary L Rev at 1372.

[3] The colloquy leading to the court's ruling is as follows:

"[THE COURT:] So we're now—we're moving on now, and so now we're at the point where—the Court understands that you do not wish to exercise your right to have a lawyer—

"[DEFENDANT]: I never waived any of my rights.

"THE COURT: Well, what you have to say is, you know 'Judge, I would like to have a lawyer appointed,' and then I'll make arrangements for that to occur.

"[DEFENDANT]: Okay. I have never waived any of my rights whatsoever, constitutional rights, common law rights, unalienable rights, laws of the land—

"THE COURT: Okay. Then tell me, do you want a lawyer appointed, yes or no?

"[DEFENDANT]: I want the Court to prove jurisdiction over this flesh and blood man—

that he wanted an attorney appointed to represent him.[4] The prosecutor then asked the court to consider whether it should, on its own motion, appoint defendant a lawyer, even if just to serve as a legal advisor. However, defendant stated that he was "ready to proceed today without a lawyer," and the court decided not to appoint counsel for defendant on its own.

As the court continued to address other pretrial issues, defendant renewed, multiple times, his objection to the court's authority over him as well as the legitimacy of the proceedings. The court overruled defendant's repeated jurisdictional arguments and objections.

The next day, before the trial court swore in the jury, the court told defendant three separate times that he still had an opportunity to have appointed counsel represent him. Defendant did not respond that he wished to have counsel appointed. Defendant had apparently told a deputy that he intended to walk out of the courtroom during the proceedings, and the court asked defendant about his intention

---

"THE COURT: That's the wrong answer, [defendant].

"[DEFENDANT]: That's the answer you're going to get, Your Honor.

"THE COURT: All right. Okay. Then I take that, and it's my ruling that that answer is a decision on your part—reflects a decision on your part to waive your right to have a court-appointed lawyer, to waive your right to have a court-appointed advisor.

"Now—

"[DEFENDANT]: I object to that completely, wholeheartedly, with every right that I reserve as a human being—

"* * * * *

"[THE COURT:] So that's my ruling, I'm finding that you're making a knowing and voluntary waiver of your right to counsel, based on your response to my questions."

[4] At his two arraignments, defendant indicated that he wanted a postponement until he could consult with a private attorney. The record does not indicate whether defendant consulted private counsel after arraignment.

On July 6, the date defendant's trial was scheduled to commence, defendant indicated to the trial court that a previous judge had suggested that he obtain a legal advisor, but that he had been unable to do so within the available time. The trial court asked defendant if he would still like to have a legal advisor, and defendant replied that "I would like to proceed today with my twenty-three questions of jurisdiction and have those answered." The trial court replied that it had already ruled on those motions but that it would order a legal advisor to be appointed for defendant. Defendant, however, told the court that he was not requesting that, and the court responded that it would not order it.

to do so. Defendant stated that he intended "to proceed *sui juris* until" he was "done proceeding."[5]

After dealing with other pretrial issues, the court again addressed defendant's jurisdictional claim, ultimately rejecting it again. Defendant then asserted:

> "I'm a sovereign human being with natural born birth-rights. All of those have been violated today and every last person here who does not have an oath of office, and everybody who does have an oath of office will be held accountable according to legitimate due process, and I will be excused from this sham of a courtroom right now."

As a result, the court ordered that, at defendant's request, he would be removed from the courtroom. Defendant was taken out of the courtroom.

The court then recessed to consider whether it could proceed without defendant given that he was proceeding *pro se*. After the court reconvened, the prosecutor summarized his research on the issue, citing *State v. Harris*, 291 Or 179, 630 P2d 332 (1981), and *State v. Skillstad*, 204 Or App 241, 129 P3d 232 (2006), *rev den*, 342 Or 727 (2007). The prosecutor explained to the court that, under those cases, a defendant can waive his or her right to be present and that the trial can proceed without a defendant even if the defendant is not represented by counsel. At that point, however, one of the deputies indicated that defendant wished to return to the courtroom. The court told the deputy to bring him in. It then stated that the question whether it could proceed in defendant's absence was now moot because defendant wished to return but that it was finding that defendant had left freely and voluntarily.

After the court swore the jury in and delivered its preliminary jury instructions, the prosecutor delivered his opening statement in the usual course. Defendant made a single objection regarding the relevance of evidence that the prosecutor had mentioned; aside from that objection, defendant did not interrupt the proceedings.

---

[5] *"Sui juris"* is Latin for "of one's own right; independent" and means "[o]f full age and capacity" and "[p]ossessing full social and civil rights." *Black's Law Dictionary* 1572 (9th ed 2009) (internal quotation marks omitted).

Defendant's opening statement focused on his position that he was "the secure party" and a "flesh and blood living breathing sentient natural person and private man," that the indictment had been returned against a "legal creation," and, therefore, that the court lacked jurisdiction over him. Defendant's opening statement began as follows:

"[DEFENDANT]: First, I don't know again, any rule, jargon or anything, I'm not a lawyer. I have not reviewed the discovery, so I don't know about the evidence that's placed against—not me—but the juristic person who's being charged as a defendant in this case.

"Ultimately the point that I intend to make here is that I, the secure party, Damascus Menefee, am a flesh and blood living breathing sentient natural person and private man. I'm not a corporate fiction, I'm not an entity created by legal procedures.

"The indictment that was returned was returned against a legal creation, not a flesh and blood man, so again, I do not have a lawyer solely because of the fact that no lawyer will come and represent—not no lawyer, but no lawyer that I've been afforded the opportunity to have represent me or my copywritten [sic] property, which is the juristic person Damasca—Damascus Lord Seymor Menefee—"

At that point, the prosecutor objected to defendant's reference to his lack of an attorney; the court told defendant to confine his opening statement to what he anticipated the evidence would be. Defendant then continued:

"[DEFENDANT]: All right. Let me—let me make clear for the record. I don't have a lawyer, I've asked for one, and it's stating I got documentation that I did that was just introduced, but whatever.

"Strike that.

"I'm here by special appearance. I'm proceeding *sui juris*, this is for you guys—special appearance and special appearance only until I am notified that I'm in an Article III court of constitutional due process. Be it known to this Court, to the jury, and for the record that I am a living breathing flesh and blood sentient natural person and private man. I have not waived any of my unalienable rights, common law constitutional rights or any other rights at any time.

"I'm a natural born American citizen as a common man of the sovereign people arising under the original jurisdiction of the *de jure* constitution of 1789 as amended by the qualified electors of the several states of the American union and the Northwest Ordinance of 1787 for the territories of the *de jure* United States.

"THE COURT: [Defendant].

"[DEFENDANT]: I am a secured party creditor, wholly in due course, and unauthorized—or excuse me—representative possessing supreme—

"THE COURT: [Defendant]—

"[DEFENDANT]: —over the debtor defendant juristic person Damascus Lord Menefee—

"THE COURT: You're not raising anything that's relevant now.

"[DEFENDANT]: —named as defendant in case number—

"THE COURT: [Defendant]—

"[DEFENDANT]: CR 09—

"THE COURT: Time out.

"[DEFENDANT]: —09-0563.

"THE COURT: Time out, now. None of that is germane—

"[DEFENDANT]: It is, it is completely relevant and—

"THE COURT: —those are all—

"[DEFENDANT]: —and if you'll let me get to it, I'll—

"THE COURT: I'm not going to—

"[DEFENDANT]: —explain why.

"THE COURT: —we talked about these things outside the—

"[DEFENDANT]: No, we have not—we have not spoken about them. We have not—

"THE COURT: —presence of the jury, they're not relevant.

"[DEFENDANT]: The jury needs to know that we are sitting in an illegal court right now that does not have jurisdiction and all of the evidence and all of the case law proves this.

"THE COURT: All right.

"[DEFENDANT]: All of the case law says that you have to prove jurisdiction before the Court proceeds—proceeds, you have not done so. You have not followed none of your own rules, you have not submitted in writing jurisdiction over this person as your law prescribes to.

"[PROSECUTOR]: Judge, I'm going to object at this time, and I have a matter for the Court.

"THE COURT: All right.

"* * * * *

"We will take this up outside the presence of the jury.

"* * * * *

"[DEFENDANT]: No, we won't. Please, please, for your own rights, crucify me please. But don't crucify the constitution, as the framers of this constitution as written, you have common law rights, this is the juristic—

"THE COURT: Just stand there, Deputy, please. Just stand there, please. Deputy—Deputy, just stand there, please.

"[DEFENDANT]: What, am I being arrested or too loud, should I lower my voice? Should I lower my voice?

"Again, I'm suggesting that you people take a look, today it's Damascus Menefee, tomorrow it's you. You're all white, you don't have to be here. You don't have to pay taxes. Know your rights, people. Seriously.

"THE COURT: All right.

"[DEFENDANT]: You're not a slave under the 14th Amendment, check it out the preamble, check out the amendments of the constitution.

"THE COURT: All right. All right. Thank you, Deputy.

"[DEFENDANT]: If you want to bar me from this Court then you do so.

"THE COURT: Well, that's what we're going to take up now. I appreciate that."

Out of the jury's presence, the prosecutor argued that it was not appropriate for defendant to make those arguments in his opening statement. The following exchange then occurred:

"[PROSECUTOR]:   Once all the evidence is in then the lawyer or in this case [defendant] representing himself will have an opportunity to—

"[DEFENDANT]:   I'm not representing myself, Your Honor, for the record, I'm representing the juristic person whom you guys have brought the—

"THE COURT:   All right. Come on, [defendant], now, come on.

"[DEFENDANT]:   No, no, I have a right to—I know I got a right to object to that.

"THE COURT:   All right, but that—

"[DEFENDANT]:   Strike it from the record of some—

"THE COURT:   Try to conclude this, [prosecutor], so—

"[PROSECUTOR]:   —will have an opportunity to argue the case, which he's trying to do now, I believe that he will have an opportunity to make the arguments he's making, he's just doing it at the wrong time in the process.

"THE COURT:   All right. Now—

"[DEFENDANT]:   I'm going to do it every opportunity I get throughout the—the trial.

"THE COURT:   But [defendant], I'm not going to allow it.

"[DEFENDANT]:   Well, you're going to have to bar me from the Court.

"THE COURT:   Well, is that what you want to have happen?

"[DEFENDANT]:   No, I do not. I want to represent what I'm supposed to represent here today.

"THE COURT:   But you can't—

"[DEFENDANT]:   But I'm not going to muffle myself, I'm not going to. You're going to have to muffle me.

"THE COURT:   Okay. All right. Then I can do that.

"[DEFENDANT]: No, I know you can.

"THE COURT: All right. So my next question for you is do you—what do you want to say now to the jury about—

"[DEFENDANT]: I will say it to the jury so they can hear it. You've heard what I want to say—actually, you haven't.

"THE COURT: All right. If you're not going to tell me how you're going to describe the evidence in this case, if you don't tell me that now, I'm not going to allow you to speak to the jury in—

"[DEFENDANT]: I'm going to speak irregardless until you throw me out of this courtroom.

"THE COURT: All right. Then I will have you removed from the courtroom.

"[DEFENDANT]: Okay.

"THE COURT: Okay. We will proceed in that fashion. We'll have [defendant] removed."

Before he could be removed, defendant said that he would like to finish his opening statement. The court told defendant that he could finish his opening statement, but not in front of the jury. Defendant indicated that he intended to tell the jury that there is a difference between a flesh and blood person and a juristic person. He then said that, after giving his opening statement, the court "can proceed with your * * * case, and I'll leave, you can have it, but I want to make them known to that, ultimately for them and for the record."

The court told defendant that it did not consider any of that information appropriate for an opening statement. The following colloquy—which ultimately devolved into disrespectful and provocative comments by defendant—then ensued concerning the court's jurisdiction and defendant's interest in remaining for trial and pursuing his defense theory:

"[DEFENDANT]: Is it true, though? Is any of what I'm saying legally documented in any of which you represented by oath or about to represent (indiscernible)?

"THE COURT: There is not anything in what you described—

"[DEFENDANT]: Well, anything in your oath of office to the constitution, and your oath of—your—you guys can help me out here—your oath to the Oregon [C]onstitution as well as to the Constitution of the United States, is anything I'm saying there?

"THE COURT: There's no—you have no foundation in the—in my oath of office, in the oath of office that's required in the Oregon [C]onstitution for—

"[DEFENDANT]: What about in the constitution?

"THE COURT: —that supports any of the points that you're making.

"[DEFENDANT]: What about right here, laws inherent to the rights of men?

"THE COURT: Natural rights or laws inherent in the rights of men? You have no foundation in any of those for any of the relief or any of the claims or assertions you're making.

"[DEFENDANT]: I'm not asking for relief, I'm asking for jurisdiction to be proven.

"THE COURT: And I've represented to you repeatedly that jurisdiction was established—

"[DEFENDANT]: Repeat it for one more time, and I'll shut up, if you'd tell me, because I don't remember you representing jurisdiction.

"THE COURT: Jurisdiction, the facts supporting jurisdiction were presented to the grand jury.

"[DEFENDANT]: Right.

"THE COURT: Those facts supporting jurisdiction need to be proved beyond a reasonable doubt, here, now, at the time of trial. That's all that the law requires.

"[DEFENDANT]: It doesn't. They—the—the—if the—I mean, did the grand jury indict in capital letters a juristic person or—

"THE COURT: Yes.

"[DEFENDANT]: —a flesh and blood man?

"THE COURT: Yes, it did.

"[DEFENDANT]: Which one? A juristic person?

"THE COURT:   You.

"[DEFENDANT]:   You said yes.

"THE COURT:   You.

"[DEFENDANT]:   Thank you.

"THE COURT:   You.

"[DEFENDANT]:   Thank you. For the record, I'm not a juristic person, I'm a flesh and blood sentient man—

"THE COURT:   Okay. Well, that's just—that's just—

"[DEFENDANT]:   —is there a difference, Your Honor?

"THE COURT:   No, those are just words. That's just—

"[DEFENDANT]:   Are they? Semantics, isn't that what this whole procedure is about, is about words? We can get a murder case dismissed on a technicality of a word.

"THE COURT:   Word salad is what it is, and so—

"[DEFENDANT]:   All right. So am I being dismissed out of this courtroom or not?

"THE COURT:   Yes, you are.

"* * * * *

"[DEFENDANT]:   All right, not being dismissed, I'm not requesting—I requested to be a part of the trial—

"THE COURT:   I will make the following findings—

"[DEFENDANT]:   Okay. So you are removing me.

"THE COURT:   Given the statements that you've made—

"[DEFENDANT]:   What made—what statements, let's clarify them for the record.

"THE COURT:   They're already clear on the record—

"[DEFENDANT]:   Which ones?

"THE COURT:   I'm making the finding that you are exercising your right not to be present at these proceedings—

"[DEFENDANT]:   No, I—I'll—I requested the right—

"THE COURT:   —since—

"[DEFENDANT]: —I mean, I'll request to be present, Your Honor—

"THE COURT: —you told me—you told me that you wanted me to have you removed if I did not allow you to make the statements that have—that are not germane to opening statement—

"[DEFENDANT]: No, I didn't tell you that. No, I didn't tell you that I wanted you to have me removed. I said you're going to have to if that's what you are going to do. I'm—

"THE COURT: What has happened here—

"[DEFENDANT]: —requesting to be present at my trial right now, Your Honor.

"THE COURT: —[defendant], is that you're interrupting me—

"[DEFENDANT]: I'm requesting to be—and to be presiding over the juristic person—

"THE COURT: —to such an extent that it amounts to a kind of filibuster.

"[DEFENDANT]: —and represent the constitution as it's framed—

"THE COURT: This, [defendant]—

"[DEFENDANT]: —my rights, my common law rights, that are—are inherent to all people and natural human beings.

"THE COURT: —is obstructionism. And it's—

"[DEFENDANT]: I could care less what you're talking about because you're not talking the truth—

"THE COURT: —and the Court does not have to—

"[DEFENDANT]: —you're not talking the truth.

"THE COURT: —this is an artifice or a strategy designed to undermine—

"[DEFENDANT]: An artifice? Why isn't it?

"THE COURT: —legal proceed—a strategy designed to undermine legal proceedings, and—

"[DEFENDANT]: You have not upheld any of your own legal proceeding—

"THE COURT: —it will not have any effect in this courtroom.

"[DEFENDANT]: —you don't even deserve to be called Your Honor.

"THE COURT: All right. Well, now you're in contempt of court—

"[DEFENDANT]: Thank you.

"THE COURT: —and I would encourage you not to go there.

"[DEFENDANT]: And, now you can hold me in jail for an actual reason now.

"THE COURT: You may take [defendant] out."

The deputies removed defendant from the courtroom, and, as they were leading him out, he screamed, "Free Menefee. Free Menefee. Shoot me, mother fucker. Shoot me.".

At the state's request, the court made the following findings concerning why it had removed defendant from the courtroom:

"Well, I think it's evident from the record. I can't imagine how I could possibly make findings that would describe more clearly what I have characterized as obstructionism, and so I'm finding that he's making a knowing and voluntary waiver of his right to be present in this proceeding.

"The record should reflect that [defendant] knows very well what he's doing. He responds and has responded over the course of these two days in numerous instances intelligently, and we have engaged in dialogue from time to time that I think makes it altogether evident that he is not suffering from any mental disability, any mental illness. He is aware of what he's doing, and this Court, as I described, considers that his disruption is an artifice designed to undermine these proceedings and prevent justice from taking place.

"And so for that reason—for those reasons, I am concluding that he is deciding consciously not to be present here during the course of this trial, and if the Court were to entertain more than it already has, his presence, it would only serve to undermine its authority, and so we are not going to proceed further with [defendant], and I'm going to have the State proceed without him."

The court then ordered the jury back into the courtroom and resumed the trial without defendant's presence and, because he was *pro se*, without any defense counsel present. The state called and examined two of its witnesses (the robbery victim and defendant's ex-girlfriend) before the court adjourned for the day.

The next day, before the trial court brought the jury into the courtroom, the prosecutor stated that he had received an e-mail from a sergeant at the jail indicating that defendant had refused to come out of his cell to attend court that day. The court explained that it had wanted defendant to be present so that it could ask him if he was prepared to sit through the proceedings "and behave properly today," but that it was now reluctant to force defendant to attend unless the state insisted. The prosecutor told the court that he was prepared to proceed without defendant present. The court then had the jail sergeant who had authored the e-mail testify telephonically about his interaction with defendant that morning.

The sergeant testified that he had gone to defendant's jail cell that morning, but defendant was not dressed for court. The sergeant related that he told defendant that he was scheduled for court, that "if he did not go to court there would be adverse consequences possibly coming his way," and that "the judge could issue an order to have him brought to court, including the use—if he resisted—the use of a taser." The sergeant testified that, at that point, defendant told the sergeant to tase him, started yelling that "we were violating his rights," and called the judge "an asshole." The court concluded that, in light of those circumstances, it would not be bringing defendant to the courtroom that day. The court then brought the jury into the courtroom and instructed the state to call its next witness. The state continued its case and examined a total of 12 witnesses before the court adjourned for the day.

The next and final day of the trial, before bringing the jury in, the court indicated that defendant

"has again refused to make himself available to be present at this trial. So we're going to proceed without him. I received that information from the jail deputies this morning and I don't intend to make any more of a record. I think

the record from yesterday and previously his own statements on the record are more than sufficient to establish that he is waiving his right to be present."

The court then had the jury brought in, the state finished presenting its side of the case, and the prosecutor delivered his closing argument. The jury returned a guilty verdict on all charges.

## II. DISCUSSION

Defendant, who is now represented by legal counsel, challenges his convictions on appeal. In a combined argument pursuant to ORAP 5.45(6),[6] he asserts three assignments of error that we consider here: the trial court erred when it (1) concluded that he had waived his right to counsel, (2) excluded him from the courtroom for the majority of the trial, and (3) conducted the majority of trial without the presence of defendant or defense counsel. Because we believe that defendant's first assignment of error presents a distinct question from his second and third assignments, we consider it separately.

### A. *Waiver of right to counsel*

In his first assignment of error, defendant challenges the trial court's ruling before the trial began that he was waiving his right to counsel. We review whether a defendant has knowingly and intentionally waived his or her right to counsel for legal error. *State v. Langley*, 351 Or 652, 666, 273 P3d 901 (2012).

Under Article I, section 11, of the Oregon Constitution, a defendant in a criminal case has a constitutional right to an attorney.[7] *Langley*, 351 Or at 663. A defendant,

---

[6] ORAP 5.45(6) provides, as relevant here:

"Each assignment of error shall be followed by the argument. If several assignments of error present essentially the same legal question, the argument in support of them may be combined so far as practicable. * * *"

[7] Article I, section 11, provides, in relevant part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

Defendant also cites the Sixth Amendment to the United States Constitution as a source for that right. Neither party asserts that the analysis under the federal constitution varies from that under the Oregon Constitution. Accordingly, we assess defendant's arguments under the Oregon Constitution only.

however, may waive his or her right to counsel and proceed *pro se. State v. Meyrick*, 313 Or 125, 131, 831 P2d 666 (1992). To be valid, that waiver must be knowing and intentional. *Langley*, 351 Or at 665. "The requirement that a waiver be 'intentional' refers to a defendant's intent to waive the right." *Id.* (some internal quotation marks omitted). A prerequisite to a waiver of counsel is the defendant's knowledge of his or her right to counsel. *Meyrick*, 313 Or at 133. Because we are "reluctant to find that fundamental constitutional rights have been waived," we will not presume a waiver of the right to counsel from a silent record. *State v. Phillips*, 235 Or App 646, 653, 234 P3d 1030, *modified on recons*, 236 Or App 465, 236 P3d 789 (2010). "Whether there has been an intentional relinquishment or abandonment of that right will depend on the particular circumstances of each case." *State v. Mendonca*, 129 Or App 463, 465, 879 P2d 233 (1994).

Here, defendant argues that a court may not assume the waiver of a constitutional right from a silent record and that, when defendant refused to request a lawyer, he was not waiving his right to an attorney, but was "simply remaining silent on that point." Furthermore, defendant contends that, because he objected to the trial court's interpretation of his response, "no rational court could take defendant's actions as a voluntary waiver of his right to counsel."

The state responds that defendant does not dispute that the trial court adequately warned him of the risks of self-representation, that the trial court repeatedly tried to have defendant accept court-appointed counsel for trial, but that defendant refused to cooperate with the court's attempts to appoint him counsel. The state further argues that, in any case, defendant expressly waived his right to counsel when he told the court directly, "I'm ready to proceed today without a lawyer," and that the court did not err in allowing defendant to proceed *pro se*. We agree with the state that, under the totality of the circumstances, defendant knew of his right to counsel and that he intentionally relinquished that right.

Defendant does not dispute that the court adequately informed him of his right to counsel. Notably, and

contrary to defendant's argument, the record in this case is not silent. The trial court sought multiple times to determine whether defendant wanted appointed counsel, and each time defendant failed to provide a responsive answer, insisting instead that he wanted the court to prove subject matter jurisdiction and that he was not waiving his rights. The court's questions, and defendant's responses, created a standstill in which defendant would neither tell the court that he wanted counsel, nor affirmatively state, at least initially, that he was proceeding without counsel. The trial court also warned defendant that it would have to conclude that he did not want to be represented by appointed counsel if defendant did not respond.

This situation is common in cases in which the defendant asserts the "flesh and blood" defense[8] and puts the trial court in the position of having to move forward with trial without getting an answer to its inquiries about appointed counsel. Though it is true that defendant objected when the court ruled that he was waiving his right to counsel, in context and properly understood, his objection was part of his overall "flesh and blood" defense that he was not waiving his rights and that the court lacked jurisdiction. Defendant never expressed that he wanted counsel to be appointed. Even after the court's ruling on waiver of counsel, the court repeatedly told defendant that he could still request an appointed attorney; each time, however, defendant did not indicate that he wished to do so. Furthermore, defendant ultimately unequivocally waived his right to counsel when he told the court that he was "ready to proceed" that day "without a lawyer." Accordingly, the trial court did not err in determining that defendant waived his right to counsel.

---

[8] One court recently described this challenge as follows:

"[T]he defendant will often refuse to cooperate with, or even speak to, his appointed counsel and will sometimes protest that he never authorized appointment of counsel. Yet, when the Court attempts to engage the defendant to determine whether the latter wants new counsel or wants to represent himself, the non-responsive dialogue begins, with the defendant refusing to affirmatively indicate his waiver of counsel or to answer in any coherent way as to how he wishes to proceed."

*United States v. Perkins,* 1:10-cr-97-1-JEC-LTW, WL 3820716 at *2 (ND Ga July 23, 2013).

## B. *Right to be present at trial and rights to mount a defense*

In his second and third assignments of error, defendant contends that the trial court erred when it excluded him from the courtroom and conducted a majority of the trial in his absence and in the absence of any defense counsel.[9] Defendant contends that his exclusion was not warranted because his behavior was not sufficiently egregious to require removal and because his "errant behavior" consisted of his legal arguments and the manner in which he executed the role of an attorney. Thus, defendant contends, it was not his presence in the courtroom that was disruptive, but the fact that he was serving as his own attorney—a ground that he contends is an invalid reason for excluding a *pro se* defendant from trial altogether. Defendant argues that, by excluding him from the courtroom, the trial court left him without anyone to represent him at trial, thus denying him rights to representation, to confront witnesses, to present witnesses in his own defense, and to present a closing argument. Under those circumstances, defendant contends, it was impossible for him to receive a fair trial.

The state first responds that defendant failed to preserve his arguments for appeal. As a general rule, we will not review a claim of error that was not raised in the trial court. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court ***."); *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). The Oregon Supreme Court has explained:

> "Precisely what suffices to 'present[] clearly' a particular position, for preservation purposes, is not something that can be explained by a neat verbal formula. And, in fact, this court has cautioned that 'problems *** may arise if the preservation onion is sliced too thinly.' *State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004). Instead, the court has counseled attention to the purposes of the rule and the practicalities it serves. As we explained in *State v.*

---

[9] In his *pro se* supplemental brief, defendant contends that the trial court also erred when it failed to provide him with opportunities to return to trial after the first day of his removal and when it concluded that he had waived the right to be present for those days. As noted, because we resolve this appeal on another basis, we need not consider that assignment of error.

> *Parkins*, 346 Or 333, 341, 211 P3d 262 (2009), '[u]ltimately,
> the preservation rule is a practical one, and close calls * * *
> inevitably will turn on whether, given the particular record
> of a case, the court concludes that the policies underlying
> the rule have been sufficiently served.'"

*State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011)
(brackets and ellipses in original). The policies underlying
the preservation rule include providing the trial court with
an opportunity to avoid or correct an error, as well as allow-
ing the opposing party to respond to arguments. *Id.*

Here, we conclude that defendant's arguments are
sufficiently preserved. Defendant objected to his removal by
stating multiple times that he wanted to be present at his
trial and that he wanted to present his defense at trial. Those
responses to the trial court's decision to remove defendant
sufficiently conveyed to the court and the prosecutor that
defendant disputed that his conduct, that is, his insistence
on making his defense argument to the jury, warranted his
removal from the courtroom.

Furthermore, the court and the prosecutor had
already considered whether the trial could proceed in the
absence of a *pro se* defendant when defendant had requested
to leave at an earlier part of the proceedings. The court, in
considering that issue, acknowledged the due process con-
cerns with continuing trial in the absence of a defendant
and any defense counsel:

> "It is highly unusual obviously, the notion that we would
> proceed without a defendant present, without anyone avail-
> able to represent the defendant's interests in his absence,
> does invoke due process considerations, and we want to
> be as sure of ourselves as we can be before we decide that
> we're going to proceed here."

The prosecutor argued to the court that, under *Harris*, 291
Or 179, and *Skillstad*, 204 Or App 241—two of the cases the
state cites to support its position on appeal—a court can pro-
ceed in the absence of a defendant and defense counsel if the
defendant is voluntarily absent. Therefore, though defendant's
arguments could have been more clearly preserved, we con-
clude that the record demonstrates that the policies behind
the preservation rule were sufficiently served in this case.

We move on to consider the merits of those arguments. Defendant asserts that he had a right to be present at his trial, that his behavior was not sufficiently egregious to warrant the trial court's termination of that right, and, because his disruptive behavior was his persistence in making legally irrelevant arguments—conduct that was directly related to his exercise of the role of attorney—the court could not remove him for that behavior. Defendant further argues that the court erred when it proceeded in his absence because, when it excluded him from the courtroom, the trial court left him with no one to represent him during the trial and deprived him of significant constitutional rights.

In response, citing *State v. Williams*, 11 Or App 227, 501 P2d 328, *rev den* (1972), and *Illinois v. Allen*, 397 US 337, 90 S Ct 1057, 25 L Ed 2d 353, *reh'g den*, 398 US 915 (1970), the state contends that it is well established that a trial court "may order a defendant to be removed from the courtroom if he persistently engages in misconduct so disruptive that the trial cannot be carried out with him in the courtroom." (Internal quotation marks omitted.) Then, citing *Harris*, 291 Or 179, and *Skillstad*, 204 Or App 241, the state argues that "it is also well established that a trial may proceed in the defendant's absence if the trial court finds that he voluntarily chose not to be present." From those principles, the state seems to argue that (1) the trial court properly exercised its discretion in removing defendant because it found that he was being intentionally disruptive and (2) because defendant's behavior was intentional, he was voluntarily choosing to be absent from his trial, thus permitting the court, under *Skillstad*, to proceed in his absence.

Before we address the legal principles that apply to defendant's arguments, we pause to note that defendant has cited four sources for his right to be present at trial: Article I, section 11, the Confrontation Clause of the Sixth Amendment to the United States Constitution,[10] an Oregon

---

[10] The Sixth Amendment provides, in relevant part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

statute, ORS 136.040(1),[11] and the Due Process Clause of the Fifth Amendment to the United States Constitution. Defendant does not explain whether, and to what extent, those rights overlap or conflict. Furthermore, defendant·does not directly argue the application of Article I, section 11, or the application of ORS 136.040(1).[12] Instead, defendant overwhelmingly cites to federal cases applying the federal constitution to support his arguments regarding his right to be present at trial. Accordingly, we understand defendant to be making his arguments under the federal constitution.

Under the federal constitution, a criminal defendant has the right to be present at his or her trial. *Allen*, 397 US at 338. That right, however, is not absolute, and "may be lost by consent or at times even by misconduct." *Id.* at 342-43 (internal quotation marks omitted). As the United States Supreme Court explained in *Allen*:

> "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations."

*Id.* at 343. The Court then explained that there are at least three constitutionally permissible ways to deal with a disruptive defendant: "(1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." *Id.* at 343-44.

---

[11] ORS 136.040(1) provides:

"If the charge is for a misdemeanor, the trial may be had in the absence of the defendant if the defendant appears by counsel; but if it is for a felony, the defendant shall appear in person."

[12] Article I, section 11, provides in part, that in "all criminal prosecutions, the accused shall have the right to public trial ***; to be heard by himself and counsel; ***[and] to meet the witnesses face to face[.]" We note that defendant does not cite to any Oregon case, nor can we find any, that has held that Article I, section 11, secures a defendant's right to be present at trial. Article I, section 11, does provide a constitutional right to adequate assistance of counsel. *Langley*, 351 Or at 663.

As to the third choice—removing the defendant from the courtroom—the Court explained that

> "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."

*Id.* at 343. The Court counseled that, after being removed, a defendant can reclaim his right to be present "as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.*

In *Allen*, the defendant refused court-appointed counsel and attempted to conduct his own defense. *Id.* at 339. During *voir dire*, the court told the defendant to confine his questions to relevant matters, and the defendant began to "argue with the judge in a most abusive and disrespectful manner." *Id.* (internal quotation marks omitted). The judge asked the defendant's standby counsel to take over the questioning, though the defendant "continued to talk, proclaiming that the appointed attorney was not going to act as his lawyer"; told the judge, "When I go out for lunchtime, you're *** going to be a corpse here"; and tore the file that his attorney had and threw the papers on the floor. *Id.* at 340. The court warned the defendant that another outburst like that would result in his removal from the courtroom. *Id.* The defendant did not heed that warning and instead continued to talk back to the judge, saying that "[t]here's not going to be no trial, either." *Id.* After more abusive remarks, the court removed the defendant and ordered that the trial continue in his absence. *Id.* Later, the court brought the defendant back to the courtroom and told him that he could stay if he behaved himself. But the defendant again indicated that he was going to disrupt the proceedings, and so the court removed him again. On review, the Supreme Court concluded that the trial court had not abused its discretion in removing the defendant because the defendant's "behavior was clearly of such an extreme and aggravated nature as to justify either his removal from the courtroom or his total physical restraint." *Id.* at 346.

The Supreme Court's decision in *Allen* makes clear that, when faced with a disruptive defendant, a trial court has at least three legally permissible options for dealing with the defendant. The trial court has the discretion to choose among those options, and, if the record demonstrates that the trial court did not abuse its discretion in making the choice that it did, we must affirm the court's ruling. *See id.* at 347 ("We do not hold that removing this defendant from his own trial was the only way the Illinois judge could have constitutionally solved the problem he had. We do hold, however, that there is nothing whatever in this record to show that the judge did not act completely within his discretion."); *accord Williams*, 11 Or App at 230-31 (stating that the determination whether a defendant's misconduct is "so disruptive that the trial cannot be carried on with him in the courtroom" "must lie within the sound discretion of the trial judge," and concluding that, in a case in which the defendant chanted in a monotone voice throughout his trial, the trial court did not abuse its discretion in removing the defendant).

Here, defendant acknowledges that a defendant can lose the right to be present at trial, but argues that his behavior was not sufficiently egregious to warrant removal from the courtroom. For example, he points out that he never showed any signs of violence, that the court and prosecutor stated that he had been polite at various times in the proceedings, and that he did not obstruct the various stages of the trial apart from refusing to participate.

Although defendant's conduct did not involve physical violence, he was at times cooperative and polite with the court and prosecutor, and his conduct was perhaps not as egregious as the defendant's conduct in *Allen*, defendant's behavior was nonetheless disruptive and repeated. At the height of his interaction with the court, defendant used abusive language toward the judge and indicated, on more than one occasion, that he would continue to engage in the behavior that the judge had told him was inappropriate. Furthermore, the record demonstrates that defendant was persistent in making his jurisdictional argument, even after the court had explained to him multiple times the reasons that it had rejected that argument. The fact that defendant

continued to make the same argument despite the court's multiple rulings and admonishments, paired with his promise that he would be making that argument "every opportunity" he got and that the court would have to "muffle" him, permitted the court to conclude that defendant's behavior was aimed at disrupting the proceedings.

Defendant nonetheless argues that the fact that his "errant behavior occurred when he was acting in the role of attorney" is dispositive in this case. Specifically, he argues that "[i]t was [his] legal arguments and how he executed the attorney role that that court objected to," and that, because "he was not disruptive when the court and prosecutor were performing their legal functions," "it was not defendant's presence in the courtroom that caused the problems; it was the fact that he was acting as his own attorney." Defendant argues that, under the Ninth Circuit's decision in *Badger v. Cardwell*, 587 F2d 968 (9th Cir 1978), that is "an invalid reason to exclude a defendant from his own trial." For the reasons that follow, we disagree with defendant's analysis under *Badger*.

*Badger* involved the trial of two co-defendants, both of whom elected to represent themselves, though standby counsel was provided. 587 F2d at 970. Badger, the defendant who is the subject of the opinion, was removed from the trial a total of four times. The trial court removed the defendant for the first time after he had interrupted and argued with the judge about a ruling relating to his co-defendant, had "raised a clenched fist," and "taunted the court to expel him." *Id.* at 973. The second removal occurred after the defendant, dissatisfied with the court's ruling regarding the questioning of a witness, had interrupted the court, complained that the jurors "never hear what's going on," and then continued to argue about the function of the jury. *Id.* at 974. The next removal occurred after an incident involving the defendant's examination of certain witnesses. During those examinations, the defendant became increasingly argumentative, repetitious, irrelevant, and hostile to objections of the prosecutor. After admonishing the defendant repeatedly, the court excused the jury and told the defendant not to argue with the witness. In the conversation that followed, the defendant "refused to give the court a straight answer, interrupted the

court as it was advising him, indicated that his own perceived harassment in prison justified the scope of his examination, and in a disrespectful manner agreed to follow the court's instructions." *Id.* at 975. The court then ordered him to be removed. Finally, the court removed the defendant for a fourth and final time after the defendant had refused to respond directly to the court's repeated inquiries.

The Ninth Circuit affirmed the trial court's first removal, but reversed on the other three. In its view, the trial court was justified in removing the defendant the first time because his behavior "was seriously disruptive," "[b]aiting the trial judge to remove him was a direct challenge to the court's authority," and the "display of a clenched fist, either as a sign of disrespect or as a gesture of intimidation, would shatter the courtroom's atmosphere of careful inquiry." *Id.* at 973. The court concluded that those "acts transcended the defendant's role as his own attorney," and that, because he was warned and told that he would have an opportunity to return if he could conform his conduct, the court did not err in excluding him. *Id.*

The Ninth Circuit contrasted the defendant's actions that led to his first removal with those that led to his subsequent removals on the basis that the latter behavior was connected to the defendant's attempt to serve as his own attorney. For example, as the court explained in analyzing the behavior that led to the defendant's second removal,

"we are looking at an inartful and inept examiner, occasionally irrelevant, often repetitious, and—most serious— seemingly incapable of letting others finish speaking when what they said went against him. ***

"We find no sign in these proceedings to compare with the earlier baiting and raised fist, or, much less, with the verbal and physical assaults of the defendants in *Allen* and [*United States v. Ives*, 504 F2d 935 (9th Cir 1974)], which would indicate an opposition to the concept of a trial itself."

*Id.* at 975. The court explained that, in the case of a *pro se* defendant, a court must consider whether the defendant's disruptive behavior is related to the defendant's execution of his or her role as an attorney or whether that behavior would persist if the defendant was removed from that role

but allowed to remain in the courtroom. *Id.* at 979. In that case, the court concluded that the defendant's "behavior was exhibited as he was playing the attorney's role," and the court concluded that "[i]n light of all the evidence, including both the limited nature of his misconduct and the evidence as to his intent, it is impossible to tell if the arguing and the interruptions would have persisted, had that role been withdrawn and assigned to another person." *Id.* at 975. The court went on to state:

> "It is reasonable to suppose that there are cases in which a defendant becomes so aroused in arguing and questioning, so frustrated by an inevitable succession of defeats on matters he little understands, so angered at his inability to elicit favorable testimony and to discredit damaging testimony, that in representing himself he loses self-control and seriously disrupts his trial. Yet, the same accused may be capable of listening and even assisting while another person, more versed in the substance and procedure of law, conducts his defense. Appellant may have been such a person. On this record we do not know; neither could the trial judge have known."

*Id.* at 979.

Defendant's behavior in this case is closer to that of the first removal in *Badger* than to the second through fourth removals. Though initially, when discussing the court's ruling about his opening statement, defendant attempted to explain why he felt that it was legally relevant to tell the jury his theory of the case, his interaction with the court soon took a different turn. Defendant told the judge that he would continue to make his argument at "every opportunity" and that the court would have to remove him to prevent him from making his argument. He then reverted to his jurisdictional argument, during which he continuously interrupted the judge, became very argumentative, and would not desist. Finally, as the court was trying to state its ruling regarding defendant's obstructionist behavior, defendant insulted the judge. In short, defendant's interactions with the court transformed from what could be characterized as an "inartful" attempt at self-representation to defiance of the court's authority and integrity, including insulting the judge. We conclude that, given the trial court's

findings that defendant was being intentionally disruptive and the evidence of defendant's behavior in the record, the trial court acted within its discretion in removing defendant from the courtroom.

That conclusion, however, does not end our inquiry. Defendant also assigns error to the trial court's decision to proceed with the trial after removing him from the courtroom. Defendant contends that, when the court removed him, he was left with no one to represent him at trial and therefore was denied various trial rights, such as the right to representation and the right to confront witnesses. The state, relying on *Harris* and *Skillstad*, seems to argue that defendant voluntarily absented himself from trial by virtue of his misconduct, and therefore, the trial court was permitted to conduct the trial in his absence.

The state's reliance on *Harris* and *Skillstad*, however, is misplaced. Defendant's argument on appeal is based on his claim that the trial court violated his rights under the federal constitution. Both *Harris* and *Skillstad* are limited to an interpretation of ORS 136.040, an Oregon statute that confers on criminal defendants a statutory right to be present at trial. In combination, those cases provide that a defendant's statutory right to be present at trial is not absolute and can be waived, and that, if the defendant's waiver is valid, the trial court can proceed in his or her absence. However, neither of those cases discusses a defendant's federal constitutional rights, nor do the cases involve a situation in which the defendant was present at trial but was removed by the court for misconduct. Both *Harris* and *Skillstad* involved defendants who simply failed to show up to their trials.

The question presented by defendant's third assignment of error is whether, under the federal constitution, a trial court can proceed in the absence of a *pro se* defendant after the court has removed the defendant for his or her disruptive behavior. Neither party has cited any Oregon case, nor could we find any, which addresses under what circumstances the federal constitution permits a trial court to proceed with a trial after removing a *pro se* defendant for his or her misconduct. Accordingly, we turn to the decisions of

other courts that have addressed that issue to aid in our analysis.

In *United States v. Mack*, 362 F3d 597 (9th Cir 2004), the Ninth Circuit considered whether the trial court erred when it conducted a portion of a trial in the absence of a *pro se* defendant who had been removed by the court due to his misconduct. In that case, the defendant elected to represent himself and had been removed from his trial for his disruptive behavior. After removing the defendant, the court truncated the trial and precluded both parties from delivering closing arguments. The jury found the defendant guilty.

On appeal, the Ninth Circuit explained that (1) defendants have a right to be present at trial, but that that right can be forfeited by misconduct; (2) defendants have the right to waive counsel and to proceed *pro se*; and (3) a trial court can terminate a defendant's self-representation if the defendant engages in misconduct. *Id.* at 600-01. However, the court concluded that "[a] defendant does not forfeit his right to representation at trial when he acts out. He merely forfeits his right to represent himself in the proceeding." *Id.* at 601. The court concluded that, in that case, when the court removed the defendant, he was left with no one to represent him and that, "[i]n practical effect, he had been removed as his own counsel and nobody stepped in to fill the gap." *Id.* The result was that the defendant was deprived of counsel, which also deprived him of other trial rights, such as the right to give a closing argument. *Id.* at 602-03. The court concluded that effectively leaving the *pro se* defendant without representation upon his removal was structural error and that, no matter how vexatious the defendant's conduct, the trial court "cannot eliminate important elements of a trial." *Id.* at 603.

In *State v. Eddy*, 68 A3d 1089 (RI 2013), the Rhode Island Supreme Court considered whether a trial court is constitutionally required to appoint counsel to represent a *pro se* defendant who has asked to leave the trial. After examining a number of cases, the court explained that, "when a *pro se* defendant absents himself from his trial of his own volition, courts are almost uniform in holding that a

trial judge is not constitutionally required to appoint counsel to represent the absent defendant." *Id.* at 1105. In contrast, the court noted that the outcome is different if "the cause of the defendant's absence is the court-ordered removal of the *pro se* defendant, which carries with it the concomitant termination of the defendant's right of self-representation." *Id.* at 1108. Because the defendant in that case had asked to be removed, the court held that the trial court was not constitutionally obliged to appoint him counsel and could proceed in his absence. *Id.* at 1109; *see also People v. Cohn,* 160 P3d 336 (Colo Ct App 2007) (holding that the *pro se* defendant forfeited his right to be present at trial by his misconduct, but that the defendant's exclusion during portions of the trial violated the defendant's right to counsel).

What *Eddy* and the cases it cites demonstrate is that there is a distinction between a "voluntary absence," in which a defendant does not appear for trial or asks to leave during trial, and an "involuntary absence," in which the court removes a defendant from the trial. In the former cases, the constitution does not require the trial court to take steps to protect the defendant's right to representation, and in the latter, it does. The trial court in this case apparently believed that defendant was voluntarily absent because he had decided, through his deliberate disruption, "consciously not to be present" at trial. However, the fact that the trial court ordered that defendant be removed places this case in the category of "involuntary absence" cases.

Those cases highlight the complex constitutional issues that are involved when a trial court removes a *pro se* criminal defendant from his or her trial for misconduct. In any case in which a defendant is *pro se*, the defendant is simultaneously exercising two fundamental constitutional rights: (1) the right to self-representation and (2) the right to be present at trial. The United States Supreme Court has held that a defendant can lose both of those rights through misconduct. *See Allen,* 397 US at 342-43; *Faretta v. California,* 422 US 806, 834 n 46, 95 S Ct 2525, 45 L Ed 2d 562 (1975) ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."). However, we agree with the Ninth Circuit that, although a defendant who acts

out at trial may forfeit the right to be present and the right to self-representation in the proceeding, the defendant does not also forfeit the right to any representation at trial. *See Mack*, 362 F3d at 601. Accordingly, we hold that, after a trial court has removed a *pro se* defendant for his or her misconduct, the trial court cannot proceed in the defendant's absence unless and until the trial court has either secured the defendant's waiver of his or her right to representation at trial or has taken some other course of action that protects the defendant's right to representation, which may include the appointment of counsel.[13]

In this case, the court removed defendant because he was being disruptive. However, without considering defendant's right to representation at trial, the court continued the trial in defendant's absence, allowing the prosecutor to call and examine two of his witnesses before recessing for the day.[14] The trial court erred in doing so because defendant did not forfeit his right to representation when he acted out, and the trial court failed to obtain defendant's waiver of that right or to appoint him counsel.

The trial court in this case could have taken a number of actions that would have avoided that error. For example, it could have ordered a recess, brought defendant back to the courtroom, told him that it was terminating his right to represent himself, and advised him of his right to representation. The court then could have determined whether defendant wanted counsel to be appointed to represent him or determined whether, instead, he was waiving that right. If defendant waived his right to representation by refusing appointed counsel, the court could have excluded defendant

---

[13] We note that, because the constitution may require the court to provide a *pro se* defendant with counsel mid-trial, it is advisable for a trial court to appoint advisory counsel for a defendant whom the court suspects will be disruptive so that the court can appoint that lawyer as counsel if the defendant can no longer represent himself. The United States Supreme Court has endorsed that approach as well, stating that a court "may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 US at 834 n 46.

[14] We recognize that, after defendant was removed on July 7, he refused to return the next two days of his trial. The state does not argue that defendant's subsequent refusal to return to court requires a different result.

and proceeded in his absence. If defendant did not waive his right to representation, then the court would have had to appoint defendant counsel before continuing the trial and would have had to attempt to secure defendant's agreement that he would proceed appropriately as a client in the courtroom. The court also could have brought defendant back to the courtroom and warned him that he could continue to represent himself if he was willing to conduct himself appropriately at trial, but that, if he acted out again, he would be removed from the courtroom and his misconduct would result in the waiver of his right to self-representation at trial.

The bottom line is that a *pro se* defendant's right to representation at trial is not instantly forfeited through misconduct, even though the defendant may have lost the right to be present and the right to self-representation. The right to representation, like any constitutional right, may be waived, but that waiver must be knowing and intelligent. *Argersinger v. Hamlin*, 407 US 25, 37, 92 S Ct 2006, 32 L Ed 2d 530 (1972); *cf. Langley*, 351 Or at 669-70 (noting that some state and federal courts have held that a defendant may impliedly waive his or her Sixth Amendment right to counsel by engaging in repeated misconduct in the attorney-client relationship if the defendant has received an advance warning that a repetition of behavior that amounts to misconduct will result in the defendant waiving the right to counsel).

## III.   CONCLUSION

In sum, the trial court did not err in ruling that defendant had waived his right to counsel pretrial, nor did it err in removing defendant from the courtroom. However, under the circumstances, the court erred when it proceeded with the trial in defendant's absence.

Reversed and remanded.