Argued and submitted April 28, reversed and remanded November 9, 2016, petition for review allowed April 13, 2017 (361 Or 350)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD LARRY LACEY,
*Defendant-Appellant.*

Josephine County Circuit Court
11CR0121, 12CR0202;
A156849 (Control), A156850

385 P3d 1151

Eric R. Johansen, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**LAGESEN, J.**

Defendant, who elected to represent himself at his criminal trial, behaved abysmally throughout the course of that trial. The trial court afforded defendant great patience but, shortly before closing argument, after repeatedly informing defendant that his behavior risked his removal from court and the trial proceeding in his absence, the court found defendant in contempt, declared defendant to have forfeited his right to present closing argument and otherwise participate in the proceedings, and ordered defendant removed from the courtroom. The trial continued in defendant's absence and, because defendant had been self-represented, no one appeared on defendant's behalf. The jury convicted defendant of most charges, and also found against him as to several sentencing enhancement factors at the subsequent trial on those factors, from which defendant also was excluded.

Defendant has appealed. Relying on our decision in *State v. Menefee*, 268 Or App 154, 341 P3d 229 (2014), decided after defendant's trial, defendant argues that the trial court's continuation of the trial in his absence violated his Sixth Amendment right to representation because the trial court did not take steps to protect defendant's right to representation, and because defendant did not knowingly and intelligently waive that right. Reviewing for legal error, *see generally Menefee*, 268 Or App at 183-86 (so reviewing same question), we agree with defendant and reverse.

It is unfortunate that we had not yet decided *Menefee* at the time of defendant's trial, because that decision would have assisted the trial court in addressing the complex problems created by defendant's misconduct. In *Menefee*, we set forth the procedure that the Sixth Amendment requires a trial court to follow when a self-represented defendant's misconduct causes the court to remove the defendant from the courtroom. 268 Or App at 185-86. The issue was one of first impression in Oregon and, after reviewing the case law from other state and federal courts to have considered the question, we observed that a situation like that confronted by the trial court here raises "complex constitutional issues," because it implicates three related but distinct

Sixth Amendment rights: (1) the right to be present at trial; (2) the right to self-representation; and (3) the right to representation. *Id.* at 184-85. Persuaded by the Ninth Circuit's analysis in *United States v. Mack*, 362 F3d 597 (9th Cir 2004), we held that a defendant may forfeit the first two of those rights by misconduct, but does not forfeit the third: "although a defendant who acts out at trial may forfeit the right to be present and the right to self-representation in the proceeding, the defendant does not also forfeit the right to any representation at trial." *Menefee*, 268 Or App at 184-85.

Consequently, because a criminal defendant does not forfeit the right to representation by misconduct (only the rights to self-representation and to be present), "after a trial court has removed a *pro se* defendant for his or her misconduct, the trial court cannot proceed in the defendant's absence unless and until the trial court has either secured the defendant's waiver of his or her right to representation at trial or has taken some other course of action that protects the defendant's right to representation, which may include the appointment of counsel." *Id.* at 185. Thus, in *Menefee*, where the trial court continued the trial in the defendant's absence without appointing counsel or obtaining a waiver of the defendant's right to representation, we concluded that the defendant's Sixth Amendment right to representation had been violated and that reversal was required. *Id.*

As the Ninth Circuit recognized in *Mack*, one of the primary rationales for this approach is to protect the structural integrity of our criminal justice system. Where a criminal case is tried against a vacant defense table, the adversarial process has broken down, and cannot ensure that the convictions rendered are fair and reliable. Our system strives to be fair, even to those who, like the defendant in *Menefee* and defendant here, work the hardest to undermine it. And the Sixth Amendment imposes upon us, as courts, an obligation to do what we can to prevent them from succeeding. *See Mack*, 362 F3d at 603 ("no matter how vexed [a court] becomes with a defendant's noisome nonsense," the Sixth Amendment does not permit the court to "eliminate important elements of a trial"). This does not mean that a court has to tolerate an obstreperous defendant's presence in the courtroom, but it does mean that the court may have to appoint

counsel for a defendant who previously elected to proceed *pro se*, notwithstanding the awkwardness of doing so mid-trial. For this reason, as we observed in *Menefee*, "it is advisable for a trial court to appoint advisory counsel for a defendant whom the court suspects will be disruptive so that the court can appoint that lawyer as counsel if the defendant can no longer represent himself." *Menefee*, 268 Or App at 185 n 13.

In this case, after defendant forfeited his rights to be present and self-representation, the trial court continued the trial in defendant's absence without complying with the procedure set forth in *Menefee*. The court did not secure a waiver of defendant's right to representation, it did not appoint counsel, and it did not take other measures to protect defendant's right to representation after it removed him from the courtroom. As a result, defendant was deprived both of closing argument and the ability to participate in the trial on the sentencing enhancement factors.

Under *Menefee*, it appears that the trial court erred, and that the error requires reversal. *Menefee*, 268 Or App at 186 (trial court's decision to continue trial without securing waiver of right to representation or otherwise taking steps to protect right to representation required reversal); *Mack*, 362 F3d at 603 (same). The state and the dissenting opinion, however, advance several arguments as to why that should not be the case. For the following reasons, we are not persuaded.

First, the state argues that defendant did not preserve his claim of error. The state is correct that defendant did not present to the trial court the same constitutional argument that he is presenting to us. However, defendant made clear his desire to present closing argument, objected to being excluded from his trial, and argued that the court was not letting him present his case. In addition, the court and the prosecutor recognized that the court's removal of defendant implicated his constitutional rights. The prosecutor specifically requested the court to make a finding that defendant had "essentially forfeited his right to remain in the Courtroom for the remainder of the Trial," and the court found that, as a result of his misconduct, defendant "thereby forfeited the right to make his closing argument and to be present during the rest of the proceedings in this matter or today's proceedings."

In *Menefee*, we held that objections like those made by defendant in this case were sufficient to preserve the defendant's assignment of error, where the record also indicated that the prosecutor and the court were aware that proceeding in the defendant's absence raised constitutional concerns. 268 Or App at 174. The circumstances in this case are not meaningfully distinguishable. As a result, we conclude that defendant has preserved his assignment of error.

Second, the state and the dissenting opinion argue that *Menefee* does not govern this case because in this case the trial court warned defendant repeatedly that his misconduct could result in his removal from the courtroom and the case proceeding without him; the state notes that it does not appear that such warnings were given in *Menefee*. In the dissenting opinion's view, *Menefee* does not control this case because in *Menefee* we did not expressly address whether the procedure described would apply where a defendant had been warned expressly of the risk that the defendant would forfeit the right to representation by misconduct. 282 Or App at 135 (Garrett, J., dissenting). The state's argument is different. It does not dispute that *Menefee* required the trial court to obtain a knowing and voluntary waiver of the right to representation but argues that *Menefee* does not dictate reversal because, under *Menefee*'s framework, the warnings given by the trial court would permit the inference that defendant knowingly and voluntarily waived his right to representation when he engaged in the misconduct that led to his exclusion from the courtroom.

We do not think that the dissenting opinion's approach can be squared with the interpretation of the Sixth Amendment adopted by *Menefee*. We stated our holding unequivocally, rejecting the notion that a defendant can forfeit the right to representation by misconduct and explaining, precisely, what trial court must do when excluding a *pro se* defendant from the courtroom: "[A]fter a trial court has removed a *pro se* defendant for his or her misconduct, the trial court cannot proceed in the defendant's absence unless and until the trial court has either secured the defendant's waiver of his or her right to representation at trial or has taken some other course of action that protects the defendant's right to representation, which may include

the appointment of counsel." *Menefee*, 268 Or App at 185. Nothing in that holding suggests that the procedure would not apply if a trial court warned a *pro se* defendant that the trial could go on in the defendant's absence if the defendant was excluded for misconduct. Although we could have qualified our holding in that way, we did not.

Moreover, the dissenting opinion's approach is difficult to square with *Mack*, the case on which we relied in *Menefee* to conclude that the Sixth Amendment prohibited a trial court from excluding a *pro se* defendant from the courtroom and then proceeding in the defendant's absence without obtaining a knowing and intelligent waiver of the right to representation. In *Mack*, the *pro se* defendant had been warned that, "if his shenanigans continued, he would be removed from the courtroom, his questioning of witnesses would cease, and he would not be permitted to present argument to the jury." 362 F3d at 599. Although those warnings did not state expressly that the trial would continue in the defendant's absence, that was their fair import. Yet those warnings were immaterial to the Ninth Circuit's analysis of the core question presented by the situation that arises upon the removal from court of a *pro se* defendant: whether the Sixth Amendment permits the continuation of trial in the absence of a *pro se* defendant who has been removed from the courtroom with no one present to represent the defendant. As noted, the Ninth Circuit concluded that the Sixth Amendment does not permit such a process, and we adopted the Ninth Circuit's interpretation in *Menefee*. The dissenting opinion correctly observes there are other approaches that we could have adopted, but the state does not argue that *Menefee* is wrongly decided. We acknowledge that reasonable jurists can disagree as to what the Sixth Amendment requires when a *pro se* defendant is removed from a courtroom for misconduct, but we decline to retreat from our decision in *Menefee* to adopt *Mack*'s view of the Sixth Amendment.[1]

---

[1] Given that state and federal courts across the country are fractured on this complex issue, we echo the sentiments of the Second Circuit: "Frankly, more guidance from the Supreme Court would be helpful." *Davis v. Grant*, 532 F3d 132, 140 (2d Cir 2008), *cert den*, 555 US 1176 (2009). In *Davis*, on federal habeas review of a state court decision under 28 USC § 2254, the Second Circuit held that a New York state court's determination that a *pro se* criminal defendant's

As to the state's point—that the warnings permit the conclusion that defendant knowingly and intelligently waived the right to representation recognized in *Menefee*—for us to conclude that defendant knowingly and intelligently waived his right to representation after he forfeited his rights to self-representation and to be present in court, we would have to be able to conclude that defendant *knew* that he retained the right to representation, notwithstanding his forfeiture of the other two rights. *See State v. Guerrero*, 277 Or App 837, 845, 373 P3d 1127 (2016) (explaining that, for waiver of right to be intelligent, a defendant must have knowledge and understanding of that right). But nothing in the trial court's warnings would have made defendant aware of the fact that he would retain the right to representation if he were excluded from the courtroom for misconduct, such that he would be entitled to appointment of counsel for the duration of the proceeding if he wanted representation.[2] The

---

Sixth Amendment rights were not violated when that defendant was removed from the courtroom for misconduct without the appointment of standby counsel was not contrary to clearly established Supreme Court precedent. 532 F3d at 145. However, the court noted that, if it had been deciding the issue for itself in the first instance, "we might conclude that [the state trial court] erred when [it] failed to appoint [counsel] to represent [the *pro se* defendant] during his well-earned absence from the courtroom." *Id.*

[2] The district court's warnings to the self-represented defendant in *United States v. Bundy*, No 3:16-cr-00051-BR-5 (D Or 2016), and the process that it employed to address the defendant's misconduct, illustrate the type of warnings and process contemplated by *Mack*. In response to misconduct by the defendant in that case, the court repeatedly warned the defendant that, as allowed by *Faretta v. California*, 422 US 806, 834 n 46, 95 S Ct 2525, 45 L Ed 2d 562 (1975), and as contemplated by *Mack*, the court would terminate his right to self-representation and re-appoint his previously appointed counsel to represent him. Minute Order, *United States v. Bundy*, No 3:16-cr-00051-BR-5 (D Or Jul 29, 2016), ECF 955 (citing *Faretta*); Order to Show Cause as to Defendant Ryan Bundy, *United States v. Bundy*, No 3:16-cr-00051-BR-5 (D Or Aug 24, 2016), ECF 1101 (citing *Faretta* and *Mack*). When the court concluded that the defendant's misconduct risked prejudice to the "fair administration of justice," it directed the defendant to show cause why the court should not declare his right to self-representation forfeited, and re-appoint counsel. Order to Show Cause as to Defendant Ryan Bundy, *United States v. Bundy*, No 3:16-cr-00051-BR-5 (D Or Aug 24, 2016), ECF 1101. By alerting the defendant that the consequence of his misbehavior would be the forfeiture of the right to self-representation and the appointment of counsel, the court's warnings informed the defendant that he had retained the right to representation even upon forfeiture of the right to self-representation. Such warnings laid the groundwork for the knowing and intelligent waiver of the right to representation that exists upon the forfeiture of the right to self-representation although, ultimately, the court in the *Bundy* case decided not to declare a forfeiture of the right to self-representation.

trial court's warnings merely told him that the trial would proceed without him if he was held in contempt, without alerting him of his ongoing right to representation in those circumstances. That omission precludes us from concluding that the trial court's warnings to defendant in this case could supply a basis for concluding that defendant knowingly and intelligently waived the right to representation identified in *Menefee*.

Finally, the state argues that, even if the trial court erred under *Menefee*, that error does not require reversal or, at most, requires reversal of defendant's sentences but not his convictions. The state argues that defendant was deprived only of the opportunity to participate in closing argument and in the trial on the sentencing enhancement factors, and that there is no basis to think that the outcome of the proceedings would have been different if defendant had been represented at those stages of the case.

We again disagree. Under *Menefee* and *Mack*, the trial court's decision to continue the trial in defendant's absence without obtaining a waiver of his right to representation, appointing counsel, or otherwise taking steps to protect that right, violated defendant's rights under the Sixth and Fourteenth Amendments. Under *Mack*, that type of Sixth Amendment error constitutes structural error and mandates reversal. 362 F3d at 602-03 (concluding that district court committed structural error where "as an aspect of termination of his self-representation, [the defendant was] denied the right to conduct any closing argument at all"). Although we did not address the point of harmless error expressly in *Menefee*, we concluded that reversal was required based on the trial court's failure to appoint counsel or to obtain a knowing and intelligent waiver of the right to representation, consistent with *Mack*'s conclusion that such an error mandates reversal. *Menefee*, 268 Or App at 185-86. We adhere to that approach here.

Reversed and remanded.

**GARRETT, J.,** dissenting.

The trial court tried to save defendant from himself. It was not required to succeed.

Before trial, defendant used up four different attorneys, including two appointed by the court. When the trial court refused defendant's request on the eve of trial for yet another lawyer and gave him a choice between keeping his most recent attorney or proceeding *pro se*, the court also gave this warning (the first of many):

"Let me tell you another reason why [proceeding *pro se*] may be a bad idea. One of the things I'm concerned about in this trial is you speaking out of turn or arguing with me after a ruling. And I told you I'm [going to] hold you in contempt. And what I'm going to do or what I intend to do to enforce that is to have you removed from the courtroom. If you're not going to behave in court, then you give up the right to be in court. *If you have an attorney, your attorney will still be here and can continue to advocate for you, continue to ask questions of witnesses and represent your interests. If you're representing yourself and you're removed from the court, then there's no one sitting at that table* * * * *and we'll just go on without you.*

"* * * * *

"You'll go to jail; you'll sit out the rest of the day in jail. At the end of the trial day, you will be released with an order to come back the next day for the next day of trial, and we'll try again. And as long as you behave, you can stay here in court."

(Emphasis added.)

With that understanding, defendant represented himself in a four-day trial, during which he continuously engaged in disruptive and disrespectful conduct. The trial court threatened to hold defendant in contempt on multiple occasions, reminding him of the consequences. For example, the trial court explained that removal would result in "[nobody] sitting at your table to carry the ball while you're gone." The trial court gave similar warnings at least four times.

On the last day of trial, defendant refused to comply with the court's ruling regarding the conduct of closing argument. Defendant insisted on offering new evidence during his closing, despite the court's explanation as to why that would not be allowed. After a lengthy exchange

with the court, defendant was finally held in contempt and removed from the courtroom. In defendant's absence, the state gave its closing argument, and the case was submitted to the jury.

According to the majority, the trial court violated defendant's constitutional rights by conducting closing arguments in his absence without either taking steps to protect defendant's "right to representation" or securing defendant's "waiver" of that right. But defendant had already waived his right to representation by counsel at the beginning of trial. Then, exercising his right of self-representation, defendant chose to engage in misconduct with full knowledge that the consequence would be his removal from court and the continuation of the trial without anyone to represent him. This case is not like *State v. Menefee*, 268 Or App 154, 341 P3d 229 (2014), on which the majority relies, for the simple reason that, here, defendant was fully warned of the consequences of his misconduct. He was warned that he would be removed, and the trial court repeatedly made it clear not only that defendant would lose the right to represent *himself*, but that he would be left without *any* representation while the trial continued. By giving defendant every imaginable warning and, then, by doing exactly what it said it would do, the trial court committed no error.

The majority interprets *Menefee* as establishing a broad rule that is determinative of the outcome here. I disagree, for the following reasons. *Menefee* addressed, as a matter of first impression, whether a *pro se* defendant's removal from his trial violated his federal constitutional right to representation. The defendant chose to represent himself and employed what is frequently referred to as the "flesh and blood" defense, a common characteristic of which is the assertion that the trial court lacks jurisdiction over the defendant because he or she is a "flesh and blood" person, distinct from the person named in the indictment. *Id.* at 156-57. In his opening statement, the defendant focused on his belief that the trial court lacked jurisdiction, and he continued to do so even after the court repeatedly admonished him that the jurisdictional issue had been resolved and further argument on that point was inappropriate. The

trial court did not, however, warn the defendant that continued misconduct could result in his removal from the courtroom. A colloquy devolved into "disrespectful and provocative comments" by the defendant, leading to his removal. *Id.* at 164-68. In the defendant's absence, the state called and examined two of its witnesses before adjourning for the day. The defendant refused to attend the remaining two days of trial and, at the conclusion of the state's case, was convicted on all charges. *Id.* at 169-70.

We reversed the defendant's conviction, explaining that "a *pro se* defendant's right to representation at trial is not instantly forfeited through misconduct, even though the defendant may have lost the right to be present and the right to self-representation." *Id.* at 186. Rather, we explained that the right to representation can be waived only if that waiver is knowing and intelligent. *Id.* We thus instructed that, after removing a *pro se* defendant for his or her misconduct, a "trial court cannot proceed in the defendant's absence unless and until the trial court has either secured the defendant's waiver of his or her right to representation at trial or has taken some other course of action that protects the defendant's right to representation, which may include the appointment of counsel." *Id.* at 185.

The majority reasons that the trial court erred by not following the "procedure" set out in *Menefee.* But the language on which the majority relies cannot be divorced from its context, where the defendant had never been warned about the consequences of his actions.[1] Waiver of a constitutional right must be voluntarily, knowingly, and intelligently made. *Brady v. United States*, 397 US 742, 748, 90 S Ct 1463, 25 L Ed 2d 747 (1970). Because the rights to representation and to self-representation are distinct, and because the defendant in *Menefee* was not told that his misconduct would terminate his right to self-representation *and* that trial would continue without him, we concluded that his intention to waive all rights of representation at trial

---

[1] Similarly, in *United States v. Mack*, 362 F3d 597 (9th Cir 2004), the case on which *Menefee* placed heavy reliance, it appears that the defendant was warned only that he would not be allowed to continue representing himself—it is not evident that the trial court made it expressly clear, as here, that the trial would continue and that he would lack any representation at all. *Id.* at 599.

could not be inferred from his conduct. In *Menefee,* we had no reason to consider the very different set of circumstances presented here, where defendant was expressly and repeatedly warned, after choosing to represent himself, that misconduct could result in his removal and the continuation of trial in his absence.

In short, however broadly we might have described our conclusion in *Menefee,* that case is distinguishable on its facts. We thus have the opportunity to address for the first time whether a defendant who validly waives his right to counsel before trial, and then forfeits his right to self-representation through misconduct during trial—*after being warned of the consequences of doing so*—has the right to the appointment of a new attorney, without a waiver of which the trial court commits constitutional error by finishing the trial. Few cases anywhere have squarely addressed that question.

It helps to begin with several foundational principles. It is well settled that a defendant has the right to proceed without a lawyer and represent himself at trial. *Faretta v. California,* 422 US 806, 95 S Ct 2525, 45 L Ed 2d 562 (1975). The United States Supreme Court has not decided whether a trial court is constitutionally required, after a defendant's valid *Faretta* waiver, to indulge the defendant's later request for reappointment of counsel. *See Marshall v. Rodgers,* ___ US ___, 133 S Ct 1446, 1450, 185 L Ed 2d 540 (2013) (holding that, "in light of the tension between the Sixth Amendment's guarantee of the right to counsel * * * and its concurrent promise of a constitutional right to proceed *without* counsel," California's approach—which gives trial courts discretion when considering a defendant's post-waiver request for counsel—is not "contrary to or an unreasonable application of" the standards established by the Court's assistance-of-counsel cases (emphasis in original; internal quotation marks and citations omitted).

It is also generally settled that a defendant may choose to absent himself from trial, and that in the case of such voluntary absence, a court is not required to take further steps to protect the defendant's rights as a predicate for continuing the trial in his absence. *See, e.g., People*

*v. Espinoza*, 1 Cal 5th 61, 373 P3d 456 (2016) (trial court did not err by proceeding to trial in the defendant's absence and without appointing counsel where the defendant "knowingly absented himself" from the proceeding); *State v. Eddy*, 68 A3d 1089, 1105 (RI 2013) ("[W]hen a *pro se* defendant absents himself from his trial of his own volition, courts are almost uniform in holding that a trial judge is not constitutionally required to appoint counsel to represent the absent defendant."); *Clark v. Perez*, 510 F3d 382, 396 (2d Cir 2008) (trial court was not required to appoint an attorney to represent a defendant who "knowingly and intelligently waived her right to counsel, unequivocally asserted her right to self-representation, made a conscious strategic choice to waive her right to be present in the courtroom as part of a *de facto* political protest defense, and was afforded the opportunity to return whenever she chose").

Finally, it is clear that a defendant may, through misconduct, forfeit his rights to self-representation and to be present in the courtroom. *See Faretta*, 422 US at 834 n 46 ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."); *Illinois v. Allen*, 397 US 337, 343, 90 S Ct 1057, 25 L Ed 2d 353 (1970) (the right to be present at trial can be lost if, after being warned, the defendant continues to conduct himself "in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom").

The difficult questions arise in cases involving removal of a self-represented defendant for misconduct. Some courts have treated these as "involuntary" absence cases requiring steps to protect the defendant's rights. *See, e.g.*, *Menefee*, 268 Or App at 184 ("[T]he fact that the trial court ordered that defendant be removed places this case in the category of 'involuntary absence' cases."); *Eddy*, 68 A3d at 1108 ("In the case of involuntary absence, the cause of the defendant's absence is the court-ordered removal of the *pro se* defendant, which carries with it the concomitant termination of the defendant's right of self-representation."). Where courts have found constitutional violations in this category of cases, they have cited the failure to appoint new counsel or to take other measures to enable the defendant's participation

remotely (for example, through videoconferencing or other technology). *See, e.g., People v. Cohn*, 160 P3d 336, 343 (Colo App 2007) (exclusion of a *pro se* defendant from the courtroom for misconduct without appointment of counsel was error where no videoconferencing arrangements were made that would have allowed the defendant to observe and participate in the proceedings); *People v. Carroll*, 140 Cal App 3d 135, 142, 189 Cal Rptr 327 (1983) (concluding that "the involuntary exclusion from the courtroom of a defendant who was representing himself, without other defense counsel present" was fundamental error); *Saunders v. State*, 721 SW2d 359, 363 (Tex Ct App 1985) (the trial court's exclusion of the defendant from the courtroom temporarily terminated his right of self-representation, requiring the trial court to direct standby counsel to assume representation).

I am not persuaded that the cases just mentioned lead us to the correct result here. First, the binary distinction between "voluntary" and "involuntary" absence, although it may adequately categorize the majority of cases, does not neatly apply where a defendant is given full warnings about the consequences of misconduct and then refuses to modify his behavior. The cases cited above that treat a defendant's absence following court-ordered removal as "involuntary" appear to have involved either no warnings or warnings less complete than what the trial court gave here.

Another problem with the "involuntary removal" line of cases is that, to the extent that they suggest that a trial court "should" appoint a new attorney for a defendant removed in the middle of trial, those suggestions do not account for every situation, including this one. I agree that it is wise, as many courts have said, for a trial court, whenever practical, to appoint "advisory" or "standby" counsel for a defendant who chooses to proceed *pro se*. The United States Supreme Court has never held this to be a requirement, however—perhaps because it will not always be practical. In this case, for whatever reason, it did not happen. Thus, at the time of defendant's removal near the conclusion of his four-day trial, no attorney had been waiting in standby mode, ready to step in. Appointment of counsel would therefore have required a halt to the proceedings, forcing the jury to wait for an unknown period of time while the trial

court (1) located another attorney to offer to defendant, and (2) gave that attorney (if accepted by defendant) time to become familiar with the preceding three days of trial so as to make a closing argument on defendant's behalf. A trial court that removes a defendant for misconduct *without* adequate prior warning may have no choice but to take those steps. But, where the trial court does everything possible to make the defendant fully aware of the consequences of his actions, the defendant's (waived) rights should not be elevated over the legitimate interest that the trial court has in finishing its business in a reasonably efficient fashion. *See generally Espinoza*, 1 Cal 5th at 78, 373 P3d at 468 (noting that delay "posed a risk of hardship to the jurors, inconvenience to the witnesses, and disruption to orderly court processes").

A better approach is illustrated by *State v. DeWeese*, 117 Wash 2d 369, 816 P2d 1 (1991). In that case, after the defendant had discharged two court-appointed attorneys, the trial court denied his request for replacement counsel. The defendant chose to represent himself, although the trial court appointed standby counsel at the defendant's request. *Id.* at 373, 816 P2d at 3. On the third day of trial, however, the defendant discharged the standby counsel, who was then excused from the courtroom. Following a series of disruptions of the state's case, the trial court removed the defendant to a bailiff's office with a television monitor from which the defendant could follow the proceedings. *Id.* When invited to return, the defendant insisted on his need for representation, which the trial court refused.

On appeal, the Washington Supreme Court affirmed the defendant's conviction. At the outset, the court explained that, "[a]fter a defendant's valid *Faretta* waiver of counsel under these circumstances, the trial court is not obligated to appoint, or reappoint, counsel on the demand of the defendant. The matter is wholly within the trial court's discretion." *Id.* at 379, 816 P2d at 6. The court went on to hold that the defendant's removal from the courtroom did not deny him a fair trial:

"The record shows [the defendant's] removal from the courtroom followed a series of outbursts in which [the

defendant] interrupted the State's direct examination of witnesses and made prejudicial remarks in the presence of the jury regarding excluded evidence and his allegedly being forced to represent himself at trial without counsel. *Prior to his removal, [the defendant] was repeatedly warned that unless he controlled his behavior the court would be compelled to take action.* [The defendant's] initial removal from the courtroom was within the trial judge's discretion to maintain an orderly and fair proceeding. *After that point, his continued absence was voluntary."*

*Id.* at 380, 816 P2d at 6 (emphases added).

Similarly, in *United States v. Jennings,* 855 F Supp 1427 (MD Pa 1994), *aff'd,* 61 F3d 897 (3d Cir 1995) (unpublished table decision), the defendant was informed by the trial court that he had waived his right to counsel through misconduct, that no substitute counsel would be appointed, and that he would be required to proceed *pro se.* The defendant's reaction was "a tirade and threats against his former counsel, corrections staff, and the prosecutor." *Id.* at 1445. When the trial court asked whether his behavior would continue in the presence of prospective jurors, the defendant answered that it would. The trial court then removed the defendant from the courtroom. Because the defendant's absence from the courtroom would effectively result in "a jury selection *in absentia,"* the trial court took the following measures:

"[T]he court arranged for the wiring of the sound system in such a manner that [the defendant] could hear the proceedings from the holding cell in the marshal's office, to which he had been removed. Also, [a deputy marshal] was sworn to ensure that he would relay faithfully messages from the court to [the defendant], and vice versa. [The defendant] also was provided with a list of the jury panel, and was offered paper and writing utensils. In this way, [the defendant] was provided with the ability to participate in the proceedings without his behavior affecting the safety and decorum of the courtroom."

*Id.* Under those circumstances, including the warnings that the defendant had been given, the district court concluded that the defendant's removal was not a Due Process violation because "[the defendant's] *own conduct, not any limitation*

*placed by the court,* prevented his participation in the jury selection process." *Id.* (emphasis added).

*DeWeese* and *Jennings* show that determining whether a defendant's absence from trial is "involuntary" is not as simple as asking whether the defendant wishes to remain present on his own terms and is not allowed to do that. A self-represented defendant who is given ample warning about the consequences of misconduct and is invited to remain if he will follow basic rules, and then declines to do so, may be understood to bring about his absence through his own will.[2] His absence may not be strictly "voluntary," but nor is it correct to view it as strictly "involuntary." Whatever label one chooses to affix to it, the trial court's obligations with respect to the continuation of trial in that situation should not be the same as where a defendant is involuntarily removed with no advance warning.[3]

Indeed, to shield a defendant from the consequences of his own informed actions is to undermine one of the conceptual underpinnings of *Faretta,* which is that a competent defendant must be accorded the right to control his own defense, however unwisely. If a person is capable (for constitutional purposes) of acting as his own lawyer, it must follow that he is capable of understanding, and choosing among, a set of alternatives when clearly presented by the trial court.

Here, the trial court tolerated defendant's misbehavior for three full days and part of a fourth while repeatedly warning him of the consequences of such conduct. Defendant then announced that he would violate the court's instructions regarding closing argument, and he was removed. I would conclude that, under those circumstances, defendant

---

[2] The analysis may differ if there is evidence that the defendant is incapable of conforming his behavior to the standards required by the court. No such evidence exists in this case.

[3] The majority opinion emphasizes the state's interest in a strong adversarial process and the danger of an empty counsel table. I don't disagree with those observations, as far as they go. But the concept of a *Faretta* waiver (to say nothing of a defendant's right not to show up for trial at all) presumes that a defendant's right to control his own representation is superior to the state's more generalized interest in ensuring that defendants are vigorously and competently represented by counsel. Here, once he chose self-representation, defendant had to live with the consequences, including his disregard of the trial court's clear warning that further misconduct would leave him without any representation at all.

had no remaining, unwaived rights that prevented the trial court from completing the trial in his absence.[4] Because the majority reaches a different conclusion, I respectfully dissent.

---

[4] It is true that the trial court here did not take the measures described in *DeWeese* or *Jennings* that enabled those defendants' remote participation in the proceedings. If defendant's removal had occurred earlier in the trial, when part of either the state's case or his case remained to be presented, the trial court's failure to take those measures would be problematic because it would have deprived defendant of the ability to monitor the proceedings in anticipation of returning to the courtroom (after agreeing to behave). Here, however, the only step that remained was closing argument. The point is not that closing argument is unimportant; the point is that, because defendant had already announced that his closing argument would violate the court's instructions, offering him the opportunity to deliver his argument by videoconference would have served no purpose.