COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

2018 NOV -5 AM 9: 45

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 76806-9-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | PUBLISHED OPINION |
| KEITH ADAIR DAVIS, | |
| Appellant. | FILED: November 5, 2018 |

CHUN, J. — Defendant appeals a judgment convicting him of two counts of possession of a stolen vehicle and one count of possession of a controlled substance. He assigns error to the trial court's decisions to (1) deny his motions for standby counsel, (2) remove him from the courtroom during trial, and (3) proceed with trial in his absence while he was self-represented.

The trial court did not abuse its discretion in denying Davis's requests for standby counsel. Nor did the trial court abuse its discretion in removing Davis from the courtroom during trial, after it warned him, due to his disruptive behavior. The court, however, allowed two material witnesses to testify in Davis's absence, with an empty defense table, and it did not afford him an opportunity to cross-examine either witness. For the reasons set forth below, we conclude this decision violated Davis's Sixth Amendment right to representation.

We affirm Davis's criminal judgment and sentence as to count 1 (possession of stolen vehicle). However, as the portion of the trial held in Davis's

absence included testimony to support counts 2 (possession of a stolen vehicle) and 3 (possession of a controlled substance), we reverse as to those counts and remand.

I.
BACKGROUND

On January 23, 2014, Sergeant Timothy Gillette of the King County Sherriff's Office arrested Davis for possession of a stolen Hyundai vehicle.

Two and a half weeks later, on February 11, 2014, Officer Danny Graf of the Federal Way Police Department observed a Buick parked near a park-and-ride and saw Davis standing outside the car, making furtive movements. As Davis got into the car to drive away, Officer Graf recorded the license plate. The owner had reported the vehicle as stolen. Officer Graf then initiated a traffic stop and arrested Davis for possession of a stolen vehicle – the Buick. Officer Justin Antholt, also of the Federal Way Police Department, arrived as backup and conducted a search incident to arrest. He discovered 2.18 grams of crack cocaine in Davis's shirt pocket.

On May 19, 2014, the State charged Davis with two counts of possession of a stolen vehicle, and one count of possession of a controlled substance. On February 6, 2015, Davis moved to proceed without legal counsel. The court granted the motion. During the trial court's colloquy to assure a proper waiver, Davis requested standby counsel. The court warned Davis it would likely not grant such a request, but told him he could file a motion.

Davis moved for standby counsel at a case setting hearing on January 28, 2016.[1] The court explained to Davis that he did not have a right to standby counsel and ordering such counsel could raise ethical and practical concerns. Davis then elaborated on his reasons for requesting standby counsel, namely access to office equipment, and unfamiliarity with the judicial process. The trial court denied Davis's motion.

At another case setting hearing on February 11, 2016, Davis again moved for standby counsel. Davis stated he needed standby counsel because "there aren't any resources available and they're limited to my health[2] as well. I may not be able to proceed." The trial court stated Washington law does not favor standby counsel. The court denied the motion.

On April 1, 2016, Davis renewed his motion for standby counsel. Citing State v. Romero, 95 Wn. App. 323, 975 P.2d 564 (1999), the trial court reiterated to Davis that he did not have a right to standby counsel. Davis claimed an "implied right" to standby counsel in the event he could not continue representing himself. The court declined to order standby counsel, and stated Davis must choose between having counsel and representing himself. Davis chose to proceed without a lawyer.

Davis made another motion for standby counsel on May 10, 2016. The trial court asked if Davis's circumstances had changed since his last motion for

---

[1]The case was significantly delayed because the trial court originally transferred it to Drug Court. Additionally, during Davis's release in this matter, he was arrested in Thurston County, charged with assault, and convicted there.

[2] Davis suffers from several medical conditions, including active multiple sclerosis, a ruptured hernia, and an obstructed bowel. Davis used a wheelchair during the trial.

standby counsel. In response, Davis referenced "doctor appointments" and being a "layperson." Seeing no change in circumstances, the trial court denied Davis's motion.

On February 27, 2017, the parties appeared for pretrial hearings. Davis moved for a continuance. The trial court denied the request, as trial was set to begin the next day and the case had already been significantly delayed.[3] Davis then stated he wanted to "withdraw" as his counsel and that the court could go to trial without him. The court attempted to clarify Davis's statements and asked him if he was requesting counsel when he said he wanted to withdraw, but Davis just repeated he would not come to trial and cited health issues. The trial court denied Davis's motion to withdraw as counsel because it would unnecessarily delay trial. The court also declined to appoint standby counsel.

Trial started the next day and Davis moved for standby counsel and a continuance. The court denied both motions because it had already ruled on them. The case proceeded to trial.

After a CrR 3.5 hearing, Davis claimed he could not continue with the trial because of excessive pain. Davis again moved for a continuance and the trial court told him it had already denied the motion. Davis stated he was "unable to continue as [his] own counsel." The court reminded Davis it had denied that motion as well. In an attempt to advise Davis of what was expected at trial, the court warned Davis it would remove him if he acted disruptively. Davis said he

---

[3] The court had already continued the case considerably to allow Davis to hire an investigator and prepare for trial.

did not care and that the court could hold trial without him.

Davis appeared for trial on March 7, 2017. In the middle of the afternoon, during the State's examination of Officer Antholt, the court excused Davis for a restroom break. When Davis returned, he noticed the water had been removed from his table. He began banging his fists on the table, screaming he needed water. The court told Davis the water was removed because Davis took restroom breaks every twenty-five minutes. The court noted Davis had consumed twice as much water as the day before and that the proceeding would soon adjourn for the day. The court tried to proceed with trial. The State attempted to continue its examination of Officer Antholt, but Davis repeatedly interrupted to make comments about the water. The trial court temporarily retired the jury and the following exchange took place:

> THE COURT: I'm going to take the jury back now.
>
> THE DEFENDANT: Thank you. You can hold your trial without me. How's that?
>
> THE COURT: I'm going to do that.
>
> THE DEFENDANT: Do that. Thank you. Thank you. Thank you. Just go ahead with your kangaroo court and your ridiculous charges, and your little games and that you do that. Load somebody else up in the prison system. Get your next victim lined up. I'm done with it. I could care less.
>
> THE COURT: All right. Wait a minute. Mr. Davis, you have one more--
>
> THE DEFENDANT: What do you want? I need water. I'm done talking. What's there to talk about? You're playing a game. I'm done playing your games.
>
> THE COURT: All right. The record's going to reflect--
>
> THE DEFENDANT: All right. The record this -- all right, for the record this. I said that, I mean that. I'm not going to continue to be a gentleman and polite. I could care less what you say. I'm done with it.

THE COURT: I'm going to find that you are voluntarily absenting yourself--

THE DEFENDANT: Whatever. Do whatever you want.

THE COURT: --from these proceedings.

THE DEFENDANT: You're going to deny me water when I need water, whatever.

THE COURT: I need him present so I can make the record, so don't take him out yet.

THE DEFENDANT: I don't care about your record.

THE COURT: Well, I do.

THE DEFENDANT: I don't. And I know your buddies up at the appellate court ain't gonna give a shit either, so fuck the record.

THE COURT: So the record should reflect that Mr. Davis has been given twice as much water as he had yesterday and, therefore, he's--

THE DEFENDANT: So what?

THE COURT: Had to use the restroom twice as much.

THE DEFENDANT: I had to use the restroom because I had a digestive dysfunction. I piss a lot. Ask the god damn -- the officers. I piss.

THE COURT: Can you keep your voice down?

THE DEFENDANT: No, I'm not. Freedom of expression. You don't want to listen then shut your ears.

THE COURT: So at about -- ten after 3:00 he was brought back here and I've explained to him that--

THE DEFENDANT: We gonna do this, we gonna play the kangaroo game. I don't care, either. You can keep playing, play with yourself. Stop playing with me. Who cares?

THE COURT: This is not about the--

THE DEFENDANT: I don't care.

THE COURT: This is about you disrupting the trial, delaying the trial.

THE DEFENDANT: Doesn't matter what it's about. What it's really about, nothing.

THE COURT: Screaming at the top of his lungs, the jury--

THE DEFENDANT: And I'm going to continue to scream. Where's my fucking water?

(Defendant screaming simultaneously with court)

THE COURT: I need to proceed with the trial, and I am finding that he is voluntarily absenting himself from the rest of these proceedings under State v. Garza, G-A-R-Z-A, and the record

6

should reflect that he continues to speak on top of his lungs, swearing, accusing me of all kinds of things.

THE DEFENDANT: You're being an asshole, and I can be one, too.

THE COURT: You're now removed from the court.

THE DEFENDANT: Good. And fuck you very much, asshole. Fuck this kangaroo court shit.

At this point, it was after three o'clock in the afternoon. In Davis's absence, the State continued questioning Officer Antholt, who testified as to finding crack cocaine in Davis's pocket. The State then examined Officer Graf, who had identified the stolen Buick, initiated the traffic stop, and arrested Davis. Officer Graf also testified as to Davis's alleged statements about how he had obtained the Buick. The court did not give Davis an opportunity to cross-examine either officer.

Davis returned to court the next morning. The trial court noted Davis's outburst on March 7 amounted to one of the worst it had seen. The court again warned Davis it would remove him if he raised his voice or used profanity. In its findings, the court indicated Davis's outburst also disrupted trial in the courtroom down the hall. The court noted Davis "did not have any further behavior issues of significance," and he attended the remainder of the trial.

## II.
## ANALYSIS

### A.    Standby Counsel

While Davis concedes he lacks a constitutional right to standby counsel, he claims the trial court abused its discretion by categorically denying his requests for such counsel. He mischaracterizes the record. The trial court properly considered Davis's requests for standby counsel.

7

An appellate court reviews a decision to deny standby counsel for an abuse of discretion. State v. DeWeese, 117 Wn.2d 369, 379, 816 P.2d 1 (1991). A trial court abuses its discretion when its "decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Garza, 150 Wn.2d 360, 366, 77 P.3d 347 (2003).

Defendants may waive their Sixth Amendment right to assistance of counsel and decide to represent themselves at trial. Romero, 95 Wn. App. at 326. If a defendant chooses self-representation, he or she does not have a right to standby counsel. DeWeese, 117 Wn.2d at 379. "The right to self-representation in a criminal matter . . . is an all-or-nothing process." Romero, 95 Wn. App. at 326.

Nevertheless, a defendant may request standby counsel, and the trial court must exercise its discretion in considering the request. See State v. Stearman, 187 Wn. App. 257, 265, 348 P.3d 394. A court abuses its discretion when it fails to exercise its discretion. State v. Flieger, 91 Wn. App. 236, 242, 955 P.2d 872 (1998).

Davis contends that, because two judges told him obtaining standby counsel was unlikely, no judge meaningfully considered his requests for standby counsel. The record does not support this argument.

The court heard Davis's motions for standby counsel in at least six separate hearings before five different judges. Initially, the trial court engaged in a colloquy with Davis to ensure he made a knowing and voluntary waiver of his right to counsel. Indeed, Davis does not challenge the validity of his waiver. The

8

court told Davis he could submit a motion for standby counsel, but warned it would not likely grant it.

At the next hearing, Davis presented his reasons for requesting standby counsel. He referenced issues such as lack of access to office equipment, and unfamiliarity with legal processes. The trial court explained at some length its view as to why Washington courts disfavor standby counsel. The court also told Davis that, though he could request standby counsel, such requests were rarely granted. The record shows the court considered his motion and denied it because, in its view, the appointment of standby counsel could give rise to ethical and practical concerns, and Davis failed to demonstrate his need for standby counsel overcame these concerns.

Davis moved for standby counsel several more times. Each time the trial court allowed him to be heard. The court also explained to Davis the reasons it denied his requests. The court afforded Davis opportunities to argue whether his circumstances had changed since the court denied his original motion. Concluding Davis's responses did not justify granting standby counsel, the court denied his motions.

The court considered each of Davis's numerous requests for standby counsel. Nothing in the record suggests the court believed it did not need to exercise its discretion. The record also does not suggest the court refused to exercise its discretion in denying the motions. The trial court adequately considered Davis's requests for standby counsel.

B.    Voluntary Absence

Davis asserts the trial court removed him from trial for disruptive behavior. The State counters Davis voluntarily absented himself. We agree with Davis.

Appellate courts review a trial court's finding of voluntary absence for an abuse of discretion. Garza, 150 Wn.2d at 365–66.

The Sixth Amendment grants defendants the right to be present at their trial. State v. Thomson, 123 Wn.2d 877, 880, 872 P.2d 1097 (1994). However, a defendant may voluntarily absent himself or herself and thereby waive the right to be present. Thomson, 123 Wn.2d at 881. Notably, the court should "indulge[] every reasonable presumption against waiver." Garza, 150 Wn.2d at 367.

The State argues Davis's statement, "You can hold your trial without me," indicates he voluntarily absented himself. Washington case law has not yet addressed whether and how a defendant may voluntary absent himself or herself by requesting to leave the courtroom. Our voluntary absence cases consider only scenarios in which the defendant either does not appear for court or does not return after removal.

Under Washington law, "the court only need answer one question: whether the defendant's absence is voluntary." Thomson, 123 Wn.2d at 881. When deciding whether a defendant's absence qualifies as voluntary, courts consider the totality of the circumstances. Thomson, 123 Wn.2d at 881. Specifically, appellate courts look to whether the trial court "(1) [made] sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) [made] a preliminary finding of

10

voluntariness, when justified, and (3) [gave] the defendant an adequate opportunity to explain his absence when he is returned to custody." Garza, 150 Wn.2d at 367. These factors are most applicable to situations where a defendant does not appear for court or does not return to court after a removal. As such, they are not readily applicable to the facts in this case. In particular, the first and third factors assume the defendant failed to appear without first explaining his or her absence to the court.

Given the lack of Washington case law on the question, we turn to decisions from other jurisdictions for guidance. The facts here resemble those of State v. Menefee, an Oregon case. In Menefee, a self-represented defendant made improper arguments during his opening statement and refused to confine the scope of his presentation. 268 Or. App. 154, 160–64, 341 P.3d 229 (2014). When the defendant began arguing with the court, it warned the defendant it would remove him if he did not behave properly. Menefee, 268 Or. App. at 163–68. When the defendant continued his unruly behavior, the court stated the defendant intentionally undermined the trial and concluded this constituted a voluntary absence. Menefee, 268 Or. App. at 166–68. Though the trial court characterized the defendant's departure as a voluntary absence, the Oregon Appellate Court concluded the record showed the trial court removed the defendant for misconduct. Menefee, 268 Or. App. at 182.

Similarly, here, the trial court found Davis intentionally undermined the trial, and stated he voluntarily absented himself and "was removed from the

11

courtroom due to his behavior."[4] Although Davis made the statement "You can hold your trial without me," he made it in an irate state, claiming he needed water for medical reasons. As mentioned above, Washington law requires the court indulge every reasonable presumption against waiver, which must be knowing and voluntary to be effective. Neither his statements nor his misconduct amounted to his voluntarily absenting himself. Thus, his absence from trial is more properly categorized as one due to removal rather than waiver. We next examine whether the court abused its discretion in removing Davis.

C.    Removal

Davis contends the trial court erred by removing him from the courtroom without first considering less severe alternatives. The State argues the trial court was not required to do so. We agree with the State.

Trial judges facing disruptive defendants must be given sufficient discretion to maintain order in their court. DeWeese, 117 Wn.2d at 380. An appellate court reviews a trial court's decision to remove a defendant for an abuse of discretion. DeWeese, 117 Wn.2d at 380. A trial court abuses its discretion when its "decision is manifestly unreasonable, or is exercised on untenable reasons, or for untenable reasons." Garza, 150 Wn.2d at 366.

The Washington Supreme Court listed several guidelines to aid courts in deciding whether to remove a defendant. State v. Chapple, 145 Wn.2d 310, 320, 36 P.3d 576 (2001). First, a trial court should warn the defendant that continued

---

[4] The trial court did so in its May 26, 2017 Findings of Fact and Conclusions of Law Regarding Defendant Voluntarily Absenting Himself from Trial Due to His Disruptive Behavior.

disruptions could lead to removal. Chapple, 145 Wn.2d at 320. Second, the defendant's obstreperous behavior must be severe enough to justify removal. Chapple, 145 Wn.2d at 320. Third, the Court stated a *preference* for the least severe alternative that will prevent interferences with the trial. Chapple, 145 Wn.2d at 320. Finally, if the defendant assures the court his or her conduct will improve, he or she must be allowed to reclaim the right to be present. Chapple, 145 Wn.2d at 320. These instructions "are not meant to be constraints on trial court discretion, but rather to be relative to the exercise of that discretion such that the defendant will be afforded a fair trial while maintaining the safety and decorum of the proceedings." Chapple, 145 Wn.2d at 320.

Davis bases his challenge on only the third factor, and argues the court erred in completely removing him from trial without considering less severe alternatives. Davis says that, because the record does not show he behaved severely enough to warrant complete removal, the court should have instead allowed him to watch the proceedings from a video monitor in another room, allowed him to return to the trial sooner than the following day, or provided him with transcripts of the proceedings for his closing argument.

Here, the trial court warned Davis he risked removal if he continued to interrupt the proceedings. Nevertheless, Davis continued to act disruptively and disregard court orders. The court tolerated much of Davis's inappropriate behavior and finally removed him following an outburst in which Davis repeatedly screamed, banged on the table, and used profanity in the courtroom. Davis

yelled so loudly that proceedings in the courtroom across the hall recessed. Such conduct warrants removal from the courtroom.

When considering the least severe alternative, the trial court can best assess both the technological limitations of its courthouse and the defendant's impending threat to disrupt the proceedings. Chapple, 145 Wn.2d at 324. Here, the record does not show the court considered having Davis attend trial in some other way, such as through video monitoring. But this is not mandated. Because there exists only a preference, as opposed to a requirement, for trial courts to use the least severe means, nothing in the record shows the trial court did not act within its discretion when removing Davis from the courtroom.

D.    Right to Representation

Davis maintains, even if the trial court properly removed him, it violated his Sixth Amendment right to representation by allowing the State to examine two of its witnesses in his absence and not affording him an opportunity to cross-examine the witnesses. Relying on DeWeese, the State contends Davis had waived his right to counsel and the court had no obligation to reappoint counsel or obtain a waiver from Davis of his right to representation.[5] Washington cases

_____

[5] The State points to DeWeese to argue the trial court did not need to obtain a waiver of the right to representation or appoint counsel after it removed the defendant. However, DeWeese does not apply on this issue, as it involved very different facts. In DeWeese, the defendant watched the State's examination of a witness from a television monitor in another room after the court removed him for violating its rulings. 117 Wn.2d at 373. The court then invited the defendant to return to cross-examine the witness, but the defendant declined. DeWeese, 117 Wn.2d at 374. The court warned the defendant of the consequences of absenting himself from court, but the defendant continued to refuse to participate and asked to return to jail. DeWeese, 117 Wn.2d at 374. The trial court allowed the State to present the remainder of its case in the defendant's absence and proceeded to closing arguments after the defendant chose not to return. DeWeese, 117 Wn.2d at 374. Because the defendant voluntarily absented himself, the Supreme Court upheld the trial court's decision not to appoint counsel for the defendant during his absence. DeWeese, 117 Wn.2d at 379.

have not yet addressed the propriety of going forward with trial after a court properly removes a self-represented defendant for disruptive behavior. After a review of cases from other jurisdictions, we conclude that, in this case, proceeding with trial in Davis's absence violated his Sixth Amendment right to representation.

Appellate courts review de novo whether a trial court violated a defendant's right to representation. State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010). Several state appellate courts and the Ninth Circuit have addressed legal questions similar to the one before us.

In People v. Carroll, the defendant chose to represent himself, but later requested an attorney. 140 Cal.App.3d 135, 137–38, 189 Cal.Rptr. 327 (Ct. App. 1983). The court declined to appoint counsel and then removed the defendant several times during the trial for mentioning his lack of representation in front of the jury. Carroll, 140 Cal.App.3d at 138–39. Specifically, the court removed the defendant during portions of jury selection, his opening statement, and the testimony of three witnesses. Carroll, 140 Cal.App.3d at 139. For two of the witnesses, the court gave the defendant an opportunity to cross-examine, but he declined. Carroll, 140 Cal.App.3d at 139.

The California Court of Appeal held the court violated the defendant's Sixth Amendment right when it "deprived him not only of his own presence, but of legal representation." Carroll, 140 Cal.App.3d at 140. As an alternative to removal, the court noted the trial court could have appointed counsel, instituted contempt proceedings, or restrained the defendant. Carroll, 140 Cal.App.3d at

141. The California Court of Appeal has since reaffirmed Carroll's holding. See People v. Ramos, 5 Cal.App.5th 897, 907 n.5, 210 Cal.Rptr.3d 242 (Ct. App. 2016) (holding when a trial court removes a self-represented defendant, the defendant is necessarily deprived of the Sixth Amendment right to representation during the absence); People v. Soukomlane, 162 Cal.App.4th 214, 75 Cal.Rptr.3d 496 (Ct. App. 2008) (noting the court's removal of a defendant during the direct examination of a state's witness violated the Sixth Amendment to counsel). Other courts have come to the same conclusion. See People v. Cohn, 160 P.3d 336, 343 (Colo. App 2007) (determining the court violated the pro se defendant's right to counsel when it removed him during segments of his trial).

The Ninth Circuit addressed a similar issue in United States v. Mack, where the trial court warned a disruptive defendant it would remove him and not permit him to question witnesses if he continued his behavior. 362 F.3d 597, 599 (9th Cir. 2014). After the defendant's inappropriate behavior continued, the court removed the defendant during his case. Mack, 362 F.3d at 599. Once the defendant returned, the court did not allow him to continue to put on his defense. Mack, 362 F.3d at 601. Instead, it halted the questioning of any witnesses and did not allow closing argument by either side. Mack, 362 F.3d at 599. "In practical effect, [the defendant] had been removed as his own counsel and nobody stepped in to fill the gap." Mack, 362 F.3d at 601.

The Mack court acknowledged a trial court may properly remove a disruptive defendant. Mack, 362 F.3d at 600. The court held, however, that while a self-represented defendant's disorderly conduct may forfeit his or her

right to represent themselves and the right to be present, he or she does not forfeit the right to representation. Mack, 362 F.3d at 601.[6] Though a court may remove a defendant for disrupting trial, "leaving [a defendant] without representation is still far from appropriate." Mack, 362 F.3d at 601. The court stated a trial court commits structural error when it prevents a self-represented defendant from cross-examining witnesses, even if the defendant was contemptuous of the court. Mack, 362 F.3d at 601–603.

In Menefee, the Oregon Court of Appeals followed Mack. 268 Or. App. at 183. As discussed above, the trial court in Menefee characterized the removal of the defendant as a voluntary absence because it found the defendant intentionally acted disruptively to undermine the trial. See Menefee, 268 Or. App. at 168. In the defendant's absence the State examined two witnesses. Menefee, 268 Or. App. at 169. The Oregon Court reversed the defendant's conviction, concluding the trial court violated the Sixth Amendment by failing to

---

[6] We note proceeding with trial in Davis's absence would not have been error if he had voluntarily absented himself. See DeWeese, 117 Wn.2d at 379. Though DeWeese does not address the effect of a voluntary absence on the right to representation, the issue was recently before the Rhode Island Supreme Court. In State v. Eddy, a defendant dismissed his attorney and chose to represent himself. 68 A.3d 1089, 1092 (R.I. 2013). After the defendant then dismissed two more attorneys whom the court appointed as standby counsel, the court denied the defendant's request for appointed counsel on the morning of trial. Eddy, 68 A.3d at 1092–96. In response, the defendant told the court, "I don't want to be in the courtroom so the trial may proceed in my absence. . . . I ask I be allowed to be removed from the courtroom during this process because I don't want to cause a situation of a forced removal." Eddy, 68 A.3d at 1096. The court explained to the defendant he had a Sixth Amendment right to be present and, if he waived that right, he would not be represented by counsel and would also be waiving his right to cross-examination. Eddy, 68 A.3d at 1097. The court allowed the defendant to leave after he stated he understood the consequences and still did not want to attend. Eddy, 68 A.3d at 1096–97. The Rhode Island Supreme Court agreed the defendant knowingly and voluntarily waived both his right to be present and right to representation, because he insisted on leaving trial after the trial court explained all the rights he would be abandoning. Eddy, 68 A.3d at 1103–04.

17

appoint counsel or have the defendant waive his right to representation before continuing without him. Menefee, 268 Or. App. at 185.

Shortly after Menefee, the Oregon Court of Appeals reaffirmed its holding that removing a self-represented defendant from a courtroom without first appointing an attorney violates the right to representation. See State v. Lacey, 282 Or. App. 123, 127, 385 P.3d 1151 (2016). There, the trial court warned the defendant that, if he disrupted the trial, it would proceed in his absence. Lacey, 282 Or. App. at 125. The appellate court rejected the argument that disruptive conduct, in light of such a warning, led to a proper waiver of the right to representation. Lacey, 282 Or. App. at 130. It held instead that, to find a valid waiver, the court should have informed the defendant of his ongoing right to representation, even if removed for misconduct. Lacey, 282 Or. App. at 130. Additionally, it ruled the trial court should have advised the defendant he could have an attorney appointed to represent him during his absence. Lacey, 282 Or. App. at 130. The court stated that, if the trial court cannot obtain a valid waiver, "the court may have to appoint counsel for a defendant who previously elected to proceed pro se, notwithstanding the awkwardness of doing so mid-trial." Lacey, 282 Or. App. at 126–27. The court explained its approach as one to protect the structural integrity of the criminal justice system. Lacey, 282 Or. App. at 126. "Where a criminal case is tried against a vacant defense table, the adversarial process has broken down, and cannot ensure that the convictions rendered are fair and reliable. Our system strives to be fair, even to those who . . . work the hardest to undermine it." Lacey, 282 Or. App. at 126.

18

Earlier this year, the Superior Court of Pennsylvania concluded a defendant cannot forfeit his right to representation through misconduct. Commonwealth v. Tejada, 188 A.3d 1288, 1290–92, 2018 PA Super 145 (2018). In Tejada, the trial court removed a self-represented defendant from trial after he acted disruptively during jury selection. Tejada, 188 A.3d at 1291. Following the line of cases from California, the Ninth Circuit, and Oregon, the appellate court held "the issue of removal is distinct from the right of representation by counsel, and the related right of self-representation." Tejada, 188 A.3d at 1293. Concluding the defendant did not waive his right to representation, the court reversed the conviction and remanded for a new trial. Tejada, 188 A.3d at 1300.

In this case, Davis chose to represent himself and then behaved obstreperously throughout the court proceedings. The court finally removed him and allowed the State to examine Officers Antholt and Graf before recessing for the day.[7] Davis went unrepresented during these testimonies and was not given the opportunity to cross-examine the two officers. He did not knowingly and voluntarily waive his right to representation and agree to have an empty defense table while the State questioned two critical witnesses. This remains the case despite his decision to represent himself. As reflected above, cases from other

---

[7] We are mindful of the difficult situation posed by Davis's conduct, especially where there was no directly applicable Washington case law. We note that trial courts can explore a number of alternatives in such situations, including the following: engaging in a colloquy regarding the right to representation, as the court did in Eddy, to see whether there is a waiver of the right to representation; recessing, to give the defendant time to calm down (suggested in Menefee, 268 Or. App. at 185–86); having the defendant attend trial via video conference or providing the defendant with a recording or transcript of the missed testimony and allowing the defendant the opportunity to cross-examine the witnesses (proposed in Lacey, 282 Or. App. at 137 (citing Cohn, 160 P.3d 343)); restraining defendant in the courtroom (allowed under Chapple, 145 Wn.2d 310 at 315); or appointing the defendant counsel (advanced in Carroll, 140 Cal.App.3d at 141).

jurisdictions support this conclusion. We are unaware of authority supporting a contrary result.

Accordingly, we conclude leaving Davis without representation at trial violated his Sixth Amendment right to representation. Because this error is structural, we remand for a new trial on counts 2 and 3. See Mack, 362 F.3d at 601–603; State v. Wise, 176 Wn.2d 1, 14, 288 P.3d 1113 (2012) ("Structural error . . . is not subject to harmlessness analysis.").[8]

Davis missed the testimony of Officers Antholt and Graf, who arrested and searched Davis in relation to his February 11, 2014 arrest for possessing a stolen Buick vehicle and crack cocaine (counts 2 and 3). These officers, however, did not participate in Davis's January 23, 2014 arrest for possessing a stolen Hyundai vehicle (count 1). Since Davis was only absent for testimony pertaining to counts 2 and 3, we see no error and affirm as to count 1.

We affirm in part, reverse in part, and remand for a new trial.

_Chun, J._

WE CONCUR:

_Mann, A.C.J._

---

[8] Because we find the trial court committed only a single error, we reject Davis's cumulative error argument.